**TRUCK INSURANCE EXCHANGE,**
**Appellant,**

v.

**Roman SMETAK, Appellee.**

**No. 05–02–01220–CV.**

Court of Appeals of Texas,
Dallas.

April 3, 2003.

Rehearing Overruled May 15, 2003.

David L. Brenner and Amanda Lewis, Burns Anderson Jury & Brenner, L.L.P., Austin, for Appellant.

Kay E. Goggin, Law Offices of Kay E. Goggin, Dallas, for Appellee.

Before Justices WHITTINGTON, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice FARRIS (Retired).

In two issues, Truck Insurance Exchange (TIE) contends the trial court's judgment in this workers' compensation case must be reversed because (1) the evidence is legally and factually insufficient to support the jury's findings that Roman Smetak suffered a compensable injury in the course and scope of his employment, the injury extended to cellulitis and osteomyelitis, and Smetak was disabled due to the injury; and (2) Smetak's counsel's comments during voir dire created incurable jury prejudice. We affirm the trial court's judgment because the evidence is both legally and factually sufficient to support the jury's findings and any harm caused by Smetak's counsel's comments during voir dire was cured by the trial court's instruction to the jury.

### FACTUAL AND PROCEDURAL BACKGROUND

TIE is Levacy Construction's (Levacy) workers' compensation insurance carrier. Smetak was employed by Levacy as a carpenter. Early on December 14, 1999, as he was carrying a load of tools down a flight of stairs at a Levacy construction site, Smetak stepped on a large piece of cardboard on the stairs, causing him to slide down the stairs and hit his right foot on the wall at the bottom of the stairwell. Smetak worked the remainder of the day for Levacy, but requested he not be required to climb ladders due to pain in his ankle. Smetak did not report to work on December 15, 1999 because his ankle was swollen and painful. On December 16, 1999, Smetak went to the emergency room, complaining of pain in his ankle. Smetak also had a temperature of 100 degrees. Dr. William Elder, the emergency room physician, diagnosed Smetak with a sprained ankle.

On December 21, 1999, Smetak returned to the emergency room with a swollen foot and ankle; erythema, or redness, in his right foot, ankle, and calf; a temperature of 102.4 degrees; and an abscess on the top of his foot. Smetak was diagnosed with cellulitis, an infection of the skin that, in Smetak's case, was caused by methicillin resistant staphylococcus aureus (MRSA). MRSA is a bacteria normally present on the outside of the skin and is resistant to almost all antibiotics. If it gains access to the body through a break in the skin or through a blood-borne transfer, it can cause cellulitis. While Smetak was hospitalized, Dr. Alan London, a general surgeon, drained the abscess on Smetak's foot

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

and debrided Smetak's foot and ankle to remove the dead tissue. Smetak was discharged from the hospital on January 3, 2000.

On January 14, 2000, Smetak was again hospitalized because London was concerned that Smetak's ankle was swollen and had reduced mobility. An MRI showed stress fractures in Smetak's ankle and osteomyelitis, or an infection of the ankle bone. This infection was also caused by MRSA. Smetak was once again hospitalized and a catheter was surgically placed into his chest to allow the intravenous injection of antibiotics. Smetak continued to receive intravenous antibiotics after his release from the hospital.

Smetak filed a claim for workers' compensation benefits. The hearing officer determined Smetak suffered an injury in the course and scope of his employment and the injury extended to the infection of Smetak's ankle. The Texas Workers' Compensation Commission appeals panel affirmed the hearing officer's decision. TIE appealed this decision to district court where the jury determined Smetak sustained a compensable injury on December 14, 1999 during the course and scope of his employment, this injury included the infection of Smetak's ankle, and Smetak was disabled due to the injury from December 14, 1999 through January 5, 2001. TIE appealed.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In its first issue, TIE complains the evidence was legally and factually insufficient to support the jury's findings. Because TIE was the party challenging the appeals panel's decision, it had the burden to prove in the trial court that (1) Smetak was not injured in the course and scope of his employment; (2) Smetak's injury did not extend to the infection in his ankle; and (3) Smetak was not disabled due to the injury. TEX. LAB.CODE ANN. § 410.303 (Vernon 1996).

When a party challenges the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, it must demonstrate the evidence conclusively established all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). We must first examine the record for evidence supporting the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

When the party having the burden of proof challenges the factual sufficiency of an adverse finding, that party must show the finding was against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all the evidence, and may only set aside the judgment if the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

### B. Sufficiency of the Evidence

TIE first argues the evidence was legally and factually insufficient to support the jury's finding Smetak was injured in the course and scope of his employment. The test is whether TIE proved that Smetak did not damage or harm the physical structure of his body or aggravate a pre-existing condition. *City of Pasadena v. Olvera,* 95 S.W.3d 494 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *see* TEX. LAB. CODE ANN. § 401.011(26) (Vernon Supp. 2003).

Smetak and David Hansen, Smetak's co-worker, testified Smetak fell down

a flight of stairs at approximately 6:30 a.m. on December 14, 1999 while Smetak was working as a carpenter for Levacy. Smetak testified that by "first break" he was limping from the fall. Smetak stated he told Randy Weaver, Smetak's supervisor at one of the jobsites on December 14th, about the injury and requested he not be required to climb ladders. Weaver testified Smetak did not tell him about the fall, was climbing ladders on December 14th, and was not limping. Smetak and Hansen testified Smetak did not report to work on December 15, 1999 because Smetak's ankle was swollen and sore. Smetak stated he had no problems walking prior to his injury on December 14, 1999 and there was no place he could have hurt his ankle other than the jobsite.

On December 16, 1999, the emergency room physician diagnosed Smetak with a sprained ankle. Dr. Nick Tsourmas, an orthopedic surgeon, Dr. Anthony Hicks, a primary care orthopedic physician, and London testified this diagnoses was incorrect. Because Smetak had an elevated temperature and a normal x-ray, these three physicians believed Smetak likely had an infection in his ankle on December 16, 1999. Hicks testified he did not believe Smetak suffered a sprained ankle from the fall at work.

There is some evidence to support the jury's finding Smetak was injured in the course and scope of his employment. Further, reviewing all the evidence, we conclude the jury's finding Smetak was injured in the course and scope of his employment was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

 TIE next argues the evidence is legally and factually insufficient to support the jury's finding that Smetak's injury extended to the infection in his right ankle

because the uncontroverted testimony of the medical experts established Smetak's sprained ankle did not cause the cellulitis or osteomyelitis. Uncontroverted expert testimony may be regarded as conclusive if the nature of the subject matter requires the jury to be guided solely by the opinion of experts and the evidence is otherwise credible and free from contradictions and inconsistency. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998); *Novosad v. Mid–Century Ins. Co.*, 881 S.W.2d 546, 550 (Tex.App.-San Antonio 1994, no writ). However, an expert's testimony may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness. *Gober v. Wright*, 838 S.W.2d 794, 797 (Tex.App.-Houston [1st Dist.] 1992, writ denied), *abrogated on other grounds, State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616 (Tex.1998).

Expert testimony was required to explain to the jury that MRSA caused Smetak's cellulitis and osteomyelitis and the paths by which MRSA could infect the body. *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 664 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (jury needed scientific guidance to better understand nature of illness and how contaminating bacteria had likely been transmitted). However, the jury was not bound by the medical expert's testimony on how MRSA actually entered Smetak's body, causing the infection of Smetak's ankle. *Id.* at 665 (jury entitled to consider all evidence, including the testimony of plaintiff, in deciding where probable exposure to bacteria occurred).

Tsourmas testified MRSA could not be contracted from an ankle sprain or from falling down a flight of stairs. He also stated there was no indication in the emergency room records that Smetak had a cut or abrasion on December 16, 1999. He

believed Smetak's fall down the stairs and development of cellulitis were merely fortuitous. However, he admitted it was not unreasonable to believe Smetak had minor cuts or abrasions from the construction site. If MRSA had access to any kind of abrasion, it could lead to an infection.

Hicks testified the December 16, 1999 emergency room records did not indicate any bruising, cuts, lacerations, or abrasions in Smetak's right leg, ankle, or foot. He believed the initial diagnosis of a sprained ankle was inaccurate and that Smetak had cellulitis from an undetermined cause. Although Hicks was unable to explain the root of Smetak's infection, he testified cellulitis can be caused by a cut or abrasion that allows MRSA access to the skin, a break in the skin due to scratching a fungal abrasion such as athlete's foot, or from a blood-borne transfer such as an intravenous injection. He admitted sharp point screws used on the construction site could cause an abrasion or a cut and that a very small cut would be sufficient to allow MRSA to enter the body.

London testified that, absent a breaking of the skin or a cut, a sprained ankle or tripping on stairs would not cause cellulitis. London does not know if Smetak had a cut or abrasion on December 16, 1999. When London first treated Smetak during the first hospitalization, London saw no obvious lacerations. However, abscesses are caused by a break in the skin, and Smetak had an abscess on his right foot. Smetak testified he likely had abrasions or punctures from his work as a carpenter.

TIE had the burden to prove by a preponderance of the evidence that the infection in Smetak's ankle was not caused by an injury inflicted on Smetak in the course and scope of his employment. The three physicians testified that, absent a break in the skin, a fall down a flight of stairs would not cause an infection. However, the physicians' sole basis for stating Smetak did not have a cut or abrasion on December 14, 1999 was the absence of a notation in the medical records from the December 16, 1999 emergency room examination. The physician who examined Smetak on December 16, 1999 did not testify regarding his observations during the examination. Smetak testified he likely did have a cut or abrasion, and Tsourmas and Hicks admitted it would not be unreasonable to believe a carpenter might have such breaks in the skin from his work. Further, London testified an abscess, such as the one on Smetak's foot, is caused by a break in the skin.

While the physicians established a sprained ankle alone would not cause cellulitis or osteomyelitis, they did not establish Smetak did not have a break in the skin due to a work-related cut or abrasion. *See Biggs v. GSC Enters., Inc.,* 8 S.W.3d 765, 769 (Tex.App.-Fort Worth 1999, no pet.) (concluding evidence factually sufficient to support adverse finding when medical evidence about cause of injury was inconclusive). There was evidence MRSA could enter the body through small cuts and abrasions and that Smetak likely had such breaks in the skin from his work as a carpenter. Thus, there was some evidence to support the jury's finding Smetak's injury extended to the infection in his ankle. Further, weighing all the evidence, we conclude the jury's determination that TIE failed to carry the burden of proving Smetak's injury did not extend to the infection in Smetak's ankle was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998).

▪ TIE next argues there is no evidence Smetak's disability commenced on December 14, 1999 because Smetak did

not miss work until December 15, 1999. A disability is "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage." TEX. LAB.CODE ANN. § 401.011(16) (Vernon Supp.2003). Smetak testified his ankle was "hurting pretty good" by "first break" on December 14, 1999. The pain was severe on the morning of December 15, 1999, and Smetak did not report to work. We conclude there is some evidence to support the jury's finding that at some point on December 14, 1999 Smetak was unable to obtain and retain equivalent employment.

## C. Admission of Appeals Panel Decision

■ TIE next contends the trial court erred in admitting the appeals panel decision into evidence. The record from the administrative proceeding, including the appeals panel decision, is admissible if it meets the requirements of the Texas Rules of Evidence. TEX. LAB.CODE ANN. § 410.306 (Vernon 1996); *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 529 (Tex.2000); *ESIS, Inc., Servicing Contractor v. Johnson*, 908 S.W.2d 554, 560 (Tex. App.-Fort Worth 1995, writ denied). TIE contends the opinion was hearsay and did not meet the criteria to be admitted under Texas Rule of Evidence 803(8) because it includes conclusions and opinions that are not based on admissible evidence.[3] We review the trial court's decision to admit evidence under an abuse of discretion standard. *Allen*, 15 S.W.3d at 527–28.

■ If properly authenticated, reports from a public office or agency setting forth either (1) the activities of the office or agency or (2) matters observed by the office or agency pursuant to duty imposed by law as to which matters there was a duty to report are not hearsay. TEX.R. EVID. 803(8). The appeals panel decision was certified as complete and correct by the Records Administrator of the Workers' Compensation Commission and sets forth the activities of the Workers' Compensation Commission appeals panel. Further, the appeals panel had a duty imposed by law to issue a decision after its review of the hearing officer's decision. TEX. LAB. CODE ANN. § 410.204 (Vernon Supp.2003). Accordingly, the appeals panel decision was properly admissible.

Because the appeals panel decision met the criteria of rule 803(8), TIE had the burden to demonstrate it should be excluded because the sources of information for the decision or other circumstances indicated a lack of trustworthiness. *Beavers v. Northrop Worldwide Aircraft Servs., Inc.*, 821 S.W.2d 669, 675 (Tex.App.-Amarillo 1991, writ denied). Other than a reference to "medical records and opinions," the appeals panel decision does not state what evidence the hearing officer or the appeals panel reviewed. The record contains no indication the appeals panel decision was

3. Rule of evidence 803(8) allows for the admission into evidence of:

Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

(A) the activities of the office or agency;

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

(C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX.R. EVID. 803(8).

based on inadmissible conclusions or opinions or was otherwise untrustworthy, and we cannot assume the appeals panel decision was based on such evidence simply because the rules of evidence do not apply in the administrative proceeding. *See* Tex. Lab.Code Ann. § 410.165(a) (Vernon 1996). The trial court did not err in admitting the appeals panel decision into evidence.

We overrule TIE's first issue.

### Improper Argument During Voir Dire

■ In its second issue, TIE contends that Smetak's counsel's comments during voir dire about the administrative process and TIE's appeal of the administrative decision biased the jury and denied TIE a fair trial. In order to establish the judgment should be reversed due to improper comments during voir dire, TIE must prove (1) an improper comment; (2) the comment was not invited or provoked; (3) error was preserved; (4) the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court; and (5) the comment, by its nature, degree, and extent, constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979); *Russell v. City of Bryan,* 919 S.W.2d 698, 708 (Tex.App.-Houston [14th Dist.] 1996, writ denied). There are only rare instances of incurable harm from an improper comment by counsel. *Reese,* 584 S.W.2d at 839.

■ TIE contends that Smetak's counsel's comments during voir dire informed the venire about inadmissible evidence and ignited a prejudice in the venire that lead to the adverse findings against TIE. Smetak's counsel questioned the venire extensively about whether the venire understood that TIE had the burden of proof and whether the venire could require TIE to carry that burden. TIE objected once during the examination on grounds that Smetak's counsel had made inaccurate statements about the burden of proof and about whether Smetak was allowed to offer evidence. The trial court did not rule on this objection, but instructed the venire that the trial court would explain the burden of proof in the charge.

Later in the examination, Smetak's counsel was questioning the venire about prior jury service and made the comment "Because as much as I may not like the fact they keep appealing this and appealing this and appealing this, I do believe in the jury system." TIE objected to "appealing and appealing and appealing" because there was only one judicial review. The trial court sustained the objection.

Following voir dire, TIE moved for a mistrial on grounds the voir dire had left the venire with the impression TIE was abusing the appeals process. The trial court denied the motion. TIE then requested the trial court instruct the jury that TIE had a right to judicial review and any comments by Smetak's counsel regarding abuse of appeals should be disregarded. The trial court instructed the jury that anything the jury had heard during voir dire was not evidence and the jury was to disregard all statements made during voir dire.

We conclude Smetak's counsel's explanation of the administrative process and the burden of proof was not so prejudicial or egregious as to constitute incurable error. We further conclude any harm was cured by the trial court's instruction to the jury to "disregard all the statements made during voir dire." TIE's second issue is overruled.

We affirm the trial court's judgment.