COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.  2-08-444-CV

 

 

LIBERTY MUTUAL                                                               APPELLANT

INSURANCE COMPANY

 

                                                   V.

 

ROY BURK                                                                            APPELLEE

 

                                              ------------

 

           FROM THE 97TH
DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Liberty Mutual Insurance Company appeals the
judgment for Roy Burk in its suit for judicial review of a decision from an
Appeals Panel of the Texas Department of Insurance, Division of Workers= Compensation.  Liberty Mutual contends that the evidence is
legally and factually insufficient to support the trial court=s
finding that Burk=s work-related injury caused his
polyneuropathy and foot ulceration.  We
affirm.








                                     Procedural
Background

Burk suffered a work-related injury to his back
in 1998.  Although Liberty Mutual
accepted the injury, it later disputed the extent of Burk=s
injury.  Burk prevailed at a Contested
Case Hearing (ACCH@) on
April 8, 2005, and an appeals panel affirmed the hearing officer=s
decision on June 23, 2005.  Liberty
Mutual then sought judicial review of the appeals panel decision by filing suit
in Montague County.  

Trial was to the court on October 25, 2007,
during which Liberty Mutual argued that Burk=s
compensable back injury did not extend to his diabetes, polyneuropathy, and
foot ulceration.  The trial court entered
judgment on October 27, 2008, that Burk=s
on-the-job back injury does not extend to diabetes but does extend to his
polyneuropathy and foot ulcerations.[1]  The appellate record does not include
findings of fact or conclusions of law. 

Factual Background








Burk and Dr. Leonard Hershkowitz, Liberty Mutual=s
retained expert witness, testified at trial. 
Burk testified that he injured his back on December 16, 1998, while
working on a drilling rig in South Texas, and that he had back surgery in March
1999.  Burk also testified that according
to his treating physician, Dr. Malonis, the removal of a disc in his back Aobliterated
some nerve endings in [his] spine@ and
caused a lack of sensation in his feet and other problems.  Burk reported to the designated doctor in
December 1999 that he had continued, although improved, tingling in the bottoms
of his feet.

Hershkowitz testified that Burk=s March
1999 surgery was a two-level discectomy that included partial removal of a
herniated disc between the fourth and fifth lumbar vertebrae.  Burk=s
herniated disc caused impairment to the L5 nerve root, which Hershkowitz
classified as a radiculopathy.  Symptoms
of a radiculopathy include pain or numbness (or both) on a particular area of
the skin or weakness in particular muscles connected to the affected nerve
root. Hershkowitz explained that the affected nerve root is often identified by
tracing the affected skin area or weakened muscle to the connected nerve root
in the spine.  








Hershkowitz testified that the terms
radiculopathy and neuropathy are used interchangeably, but that he does not
believe the terms are actually interchangeable. 
Radiculopathy, according to Hershkowitz, is a nerve root injury closer
to the spine and neuropathy is a nerve injury farther away from the spine.  Many things can cause neuropathy, but he said
diabetes and malnutrition are the two most common causes.  Hershkowitz testified that diabetics
frequently have neuropathy, that smoking aggravates diabetic neuropathy, and
that maintaining blood sugar better maintains the progression of diabetic
neuropathy. 

Burk testified that he had emergency surgery in
September 2002 after experiencing increased back pain and an episode of
paralysis.  Hershkowitz testified that
Burk=s
progressive back problems were consistent with radiculopathy and included
symptoms that radiated into his legs, predominantly into his left lower
extremity.  The problems caused bladder
and ambulation problems, and Burk was unable to perform his job.  A large herniated disc, predominately at the
L4-L5 interspace, compressed the nerve roots in the lower part of Burk=s spine,
leading to a diagnosis of cauda equina syndrome.[2]  

The 2002 surgery involved a decompression
laminectomy for a large recurrent herniation at L4-L5, a laminectomy and fusion
at L3-L4 and L4-L5, and a fusion from L3 to L5. 
Hershkowitz testified that the cauda equina syndrome was a continuation
of Burk=s
on-the-job back injury but opined that the 2002 surgery was successful.  








Burk had continuing symptoms after the 2002 back
surgery, including pain, burning, numbness, and weakness.  The January 23, 2003 consultation report by
Dr. Bixler lists weakness in Burk=s legs Adue to
the neuropathic injury of the cauda equina syndrome.@  Burk reported to Dr. Bixler in April 2003
that his feet were getting cold on and off, so Dr. Bixler ordered
electrodiagnostic studies to follow up on the complications.  The studies revealed a nerve root problem
involving the left and right lower extremities and generalized polyneuropathy.  Dr. Bixler=s
narrative report states that the polyneuropathy is probably pre-existing and Afamilial.@  But the narrative report also states that the
polyneuropathy made Burk at risk for poor recovery following the herniated
disc, even though the polyneuropathy did not cause the herniated disc.[3]


In September 2006, Dr. Malonis treated Burk for a
sore on his left foot. Burk previously had an ulcer on his right foot, and
Hershkowitz testified that ulcerations in both feet is compatible with a
diabetic condition.

Hershkowitz testified that he did not personally
examine Burk but felt comfortable relying on the electrodiagnostic studies and
offering opinions about the cause of Burk=s
polyneuropathy and foot ulcer. 
Hershkowitz also testified, however, that if Burk were his own patient,
he would have interviewed a family member and done additional blood tests to
look for undiagnosed causes. 








Hershkowitz testified that, in his opinion, there
was no relationship between Burk=s work
injury and his polyneuropathy because Burk=s
external foot symptoms did not match the injured nerve roots and because
Hershkowitz believes Burk=s diabetes caused the
polyneuropathy.  Hershkowitz also relied
on the adage that Acommon things happen commonly@ and
consequently, in his opinion, Burk=s
diabetes caused the right foot ulcer because this type of ulceration is very
common with diabetes and peripheral neuropathy. 
Patients with diabetes and peripheral neuropathy have decreased
sensation in their feet, meaning that even a small blister can be the source of
an ulceration. Hershkowitz testified that he did not find literature suggesting
a link between Burk=s nerve root injuries and his
foot problems but acknowledged that Dr. Malonis, Burk=s
treating doctor, disagreed with his opinion about the cause of the foot
ulceration.  

Hershkowitz further testified that, in his
opinion, the cauda equina syndrome did not cause Burk=s foot
problems or neuropathy because Burk has an S1 radiculopathy and the nerve roots
in S1 do not go to the part of the foot where Burk had problems.  Hershkowitz testified that Burk=s
diabetes, not the cauda equina syndrome, caused Burk=s foot
problems and neuropathy.  








On cross-examination, Hershkowitz agreed that the
cauda equina syndrome was part of the compensable injury and explained that the
cauda equina syndrome meant that Burk=s
herniated disc caused abnormalities in certain nerve roots in the L4 and L5
area.  The compromised nerve roots supply
the legs, feet, and toes and caused symptoms of low-back pain, pain in the legs
and groin area, and problems with Burk=s bowel
and bladder.  Specifically, Hershkowitz
agreed that Burk=s cauda equina syndrome could
cause him to have symptoms in his foot. 
Hershkowitz acknowledged that the heel, where Burk had his ulcer, is
supplied by the nerve roots from S2 and L5 and that Burk had damage to L5. 

The trial court, without objection from Liberty
Mutual, took judicial notice of the hearing officer=s
decision from the CCH.  The hearing
officer=s
decision, which was affirmed by the appeals panel, states that Liberty Mutual=s
retained expert witness, Dr. William Gaines, testified at the CCH that many of
Burk=s
symptoms could have been caused by the cauda equina syndrome.  Hershkowitz acknowledged Dr. Gaines=s CCH
testimony but stated that he disagreed with the opinion. 

                                             Discussion

Liberty Mutual contends that the evidence is
legally and factually insufficient to support the trial court=s
finding that Burk=s work-related injury caused his
polyneuropathy and foot ulceration.








A. Workers=
Compensation Act Appeals

As Liberty Mutual did in this case, a party may
appeal a final decision from an Appeals Panel of the Texas Department of
Insurance, Division of Workers=
Compensation to the courts for a modified de novo review.  Tex. Workers' Comp. Comm'n v. Garcia,
893 S.W.2d 504, 515 (Tex. 1995).  Under
this modified de novo review, all issues regarding compensability of the injury
may be tried by the jury or court.  Id.
at 528.  The court, although informed of
the appeals panel decision, is not required to accord it any particular
weight.  Tex. Lab. Code Ann. ' 410.304(b)
(Vernon 2006); Abilene Indep. Sch. Dist. v. Marks, 261 S.W.3d 262, 268
(Tex. App.CEastland 2008, no pet.).  The fact finder Adoes not
review [the appeals panel decision] for >reasonableness,= but
rather independently decides the issues by a preponderance of the evidence.@  Garcia, 893 S.W.2d at 531.  The party challenging the appeals panel
decision bears the burden of proof by a preponderance of the evidence.  Tex. Lab. Code Ann. ' 410.303
(Vernon 2006).

B. Standard of Review








In a trial to the court where no findings of fact
or conclusions of law are filed, the trial court=s
judgment implies all findings of fact necessary to support it.  Pharo v. Chambers County, 922 S.W.2d
945, 948 (Tex. 1996); In re Estate of Rhea, 257 S.W.3d 787, 790 (Tex.
App.CFort
Worth 2008, no pet.).  Where a reporter=s record
is filed, as it was in this case, the implied findings are not conclusive, and
an appellant may challenge them by raising both legal and factual sufficiency
of the evidence issues.  BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); Estate of Rhea,
257 S.W.3d at 790.  Where such issues are
raised, the applicable standard of review is the same as that to be applied in
the review of jury findings or a trial court=s
findings of fact.  Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989). 
The judgment must be affirmed if it can be upheld on any legal theory
that finds support in the evidence.  Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  AIn a
bench trial, the trial court is the sole judge of the credibility of the
witnesses, assigns the weight to be given their testimony, may accept or reject
all or any part of their testimony, and resolves any conflicts or
inconsistencies in the testimony.@  Rich v. Olah, 274 S.W.3d 878, 884
(Tex. App.CDallas 2008, no pet.).  As a reviewing court, Awe may
not pass upon the credibility of the witnesses or substitute our judgment for
that of the trier of fact, even if a different answer could be reached upon
review of the evidence.@ 
Id.








We may sustain a legal sufficiency challenge only
when (1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63
(1960).  In evaluating the legal
sufficiency of the evidence to support a finding, Awe must >determine
whether the proffered evidence as a whole rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.=@  Sanders v. Total Heat & Air, Inc.,
248 S.W.3d 907, 912 (Tex. App.CDallas
2008, no pet.) (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)).  AWe view
the evidence in the light favorable to the finding, crediting favorable
evidence if a reasonable fact-finder could, and disregarding contrary evidence
unless a reasonable fact-finder could not.@  Id. (citing City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005)). 
If a party attacks the legal sufficiency of an adverse finding on which
the party had the burden of proof, and there is no evidence to support the
finding, we review all the evidence to determine whether the contrary
proposition is established as a matter of law. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).








When reviewing an assertion that the evidence is
factually insufficient to support a finding on which the appealing party had
the burden of proof, we set aside the finding only if, after considering and
weighing all of the evidence in the record pertinent to that finding, we
determine that the evidence supporting the finding is so contrary to the
overwhelming weight of all the evidence that the answer should be set aside and
a new trial ordered.  Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

C. Sufficiency of the Evidence








As the party appealing the appeals panel
decision, Liberty Mutual had the burden to prove by a preponderance of the
evidence that Burk=s work-related injury did not
cause his polyneuropathy and foot ulceration. 
Tex. Lab. Code Ann. ' 410.303;
see also Marks, 261 S.W.3d at 268. 
Despite Liberty Mutual=s burden
of proof, Liberty Mutual argues there is no evidence to support the trial court=s
judgment because Burk did not offer testimony from a medical expert at
trial.  In doing so, Liberty Mutual cites
cases for the proposition that expert medical testimony is required where the
injury or condition is beyond the scope of common knowledge and experience of
the fact finder.  See Schaefer
v. Tex. Employers= Ins. Ass=n, 612
S.W.2d 199, 202 (Tex. 1980); Hernandez v. Tex. Employers Ins. Ass=n, 783
S.W.2d 250, 253 (Tex. App.CCorpus
Christi 1989, no writ).  While the legal
proposition is facially correct, Liberty Mutual appears to ask us to apply the
proposition against Burk, who did not have the burden of proof at trial, and
hold that Burk presented no evidence that his work-related injury caused his
polyneuropathy and foot ulceration.  This
we cannot do.  Instead, our inquiry must
focus on whether there is any evidence in the record to support the trial court=s
finding that Burk=s work-related injury caused his
polyneuropathy and foot ulceration. 
Uniroyal Goodrich Tire Co., 977 S.W.2d at 334.

The standard of causation in workers=
compensation cases differs from the standard in other cases. See Flores
v. Employees Ret. Sys. of Tex., 74 S.W.3d 532, 549 (Tex. App.CAustin
2002, pet. denied) (differentiating between Aproximate
cause@ in
negligence cases and Aproducing cause@ in
workers=
compensation cases).  Articulating the
producing cause standard applicable to workers=
compensation cases, the Fourteenth Court of Appeals recently stated:








Courts liberally construe
workers= compensation legislation
to carry out its purpose of compensating injured workers and their
dependents.  Because of this liberal
interpretation, a workplace accident or disease is considered to be a producing
cause even if it is not a substantial factor in bringing about the injury,
disability, or illness.  Therefore, a
workplace injury need not be the sole or primary cause in bringing about the
disability or illness; rather, as long as the occupational injury is a
producing cause of the disability or illness, there is a sufficient causal link
under the workers= compensation
scheme.  An unrelated condition or injury
may even be the primary factor in causing an employee=s disability or death and
still not preclude a recovery of workers= compensation benefits.  In addition, a pre-existing condition will
not preclude compensation under the system as long as a workplace accident
contributed to the injury in some amount. 
It is settled law in Texas that in a workers= compensation case, there
may be more than one producing cause of an injury, incapacity, or death.

 

Transcontinental Ins. Co. v. Crump, 274 S.W.3d 86, 99B100
(Tex. App.CHouston [14th Dist.] 2008, pet.
filed) (internal citations omitted); see also INA of Tex. v. Howeth, 755
S.W.2d 534, 536B37 (Tex. App.CHouston
[1st Dist.] 1988, no writ).  With these
standards in mind, we review the record for any evidence to support the trial
court=s
finding that Burk=s work-related injury caused his
polyneuropathy and foot ulceration. 

Burk=s
work-related injury required surgery in 1999 to repair a herniated disc between
his fourth and fifth lumbar vertebrae. 
The herniated disc caused an impairment to the L5 nerve root, which can
further cause symptoms of pain or numbness on a particular area of the skin or
weakness in particular muscles connected to the affected nerve root.  Burk testified that, according to his
treating physician, Dr. Malonis, the removal of a disc in his back Aobliterated
some nerve endings in [his] spine@ and
caused a lack of sensation in his feet and other problems.








Burk later underwent emergency surgery in
September 2002 for cauda equina syndrome, which was caused by a large herniated
disc at the L4-L5 interspace that compressed the nerve roots in the lower part
of Burk=s spine.
The nerve roots supply the legs, feet, and toes, and the impairment caused
symptoms of low-back pain, pain in the legs and groin area, and problems with
Burk=s bowel
and bladder.  The heel, where Burk had
his ulcer, is supplied by the nerve roots from S2 and L5.  It was undisputed at trial that the cauda
equina syndrome was a continuation of Burk=s
work-related injury.

Burk had additional complications after the 2002
surgery including weakness in his legs that Dr. Bixler linked to the cauda
equina syndrome. Electrodiagnostic studies revealed a nerve root problem
involving the left and right lower extremities and generalized
polyneuropathy.  Further, Liberty Mutual=s
retained expert witness at the CCH, Dr. Gaines, testified that many of Burk=s
symptoms could have been caused by Burk=s cauda
equina syndrome.








Liberty Mutual argues that the appeals panel
decision is not evidence that can support the trial court=s
judgment because the appeals panel decision was not based on competent medical
evidence and because it was not admitted into evidence.  We disagree. 
First, Liberty Mutual did not object before the trial court took
judicial notice of the appeals panel decision during the trial.  Liberty Mutual therefore waived any objection
that the appeals panel decision is not based on competent medical
evidence.  See Tex. R. App. P.
33.1(a)(1); Tex. R. Evid. 103(a)(1). 
Second, the appeals panel decision was evidence in the case because the
trial court took judicial notice of the appeals panel decision.  Liberty Mutual attached the appeals panel
decision to its original petition, so the appeals panel decision was included
in the trial court=s records in the case.  AIt is
well recognized that a trial court may take judicial notice of its own records
in a cause involving the same subject matter between the same, or practically
the same, parties.@ 
Sierad v. Barnett, 164 S.W.3d 471, 481 (Tex. App.CDallas
2005, no pet.) (quoting Gardner v. Martin, 345 S.W.2d 274, 276 (Tex.
1961)).  Once the trial court took
judicial notice of the appeals panel decision, it was evidence in the case that
could potentially support the trial court=s
judgment. Id.; see also ESIS, Inc. v. Johnson, 908 S.W.2d 554,
560 (Tex. App.CFort Worth 1995, writ denied)
(holding that an appeals panel opinion is admissible as evidence under section '
410.306(b) of the labor code).








Liberty Mutual also argues that Dr. Hershkowitz=s
testimony was uncontroverted and therefore conclusive.  AUncontroverted
expert testimony may be regarded as conclusive if the nature of the subject
matter requires the jury to be guided solely by the opinion of experts and the
evidence is otherwise credible and free from contradictions and inconsistency.@ Truck
Ins. Exch. v. Smetak, 102 S.W.3d 851, 855 (Tex. App.CDallas
2003, no pet.) (citing Uniroyal Goodrich Tire Co., 977 S.W.2d at
338).  AHowever,
an expert=s testimony may be contradicted
by the testimony of other witnesses or by cross-examination of the expert
witness.@  Id.

In this case, Dr. Hershkowitz=s
testimony was internally inconsistent. 
For example, Dr. Hershkowitz testified on direct examination that there
was no relationship between Burk=s work
injury and polyneuropathy because Burk=s
external foot symptoms did not match the injured nerve roots.  On cross-examination, however, Hershkowitz
testified that Burk=s cauda equina syndrome could
cause him to have symptoms in his foot, that the heel, where Burk had his
ulcer, is supplied by the nerve roots from S2 and L5, and that Burk had damage
to L5.  In addition, Hershkowitz
testified that he did not personally examine Burk and that if Burk were his own
patient, he would have interviewed a family member and conducted additional
blood tests to look for undiagnosed causes of Burk=s
problems.  See Flores v.
Cuellar, 269 S.W.3d 657, 661 (Tex. App.CSan
Antonio 2008, no pet.) (AEven if the nature of the
subject matter [required] the trial court to be guided solely by the opinion of
experts, the trial court could have properly concluded [the] expert opinions
were not otherwise credible and free from contradictions and inconsistency.@).  We do not agree that Dr. Hershkowitz=s
testimony was conclusive in this case. 








Based on the foregoing, after reviewing all of
the evidence in the light favorable to the trial court=s
findings, crediting favorable evidence if a reasonable factfinder could, and
disregarding contrary evidence unless a reasonable factfinder could not, we
hold that there is legally sufficient evidence to support the trial court=s
findings that Burk=s work-related injury caused his
polyneuropathy and foot ulceration. 
Likewise, after considering and weighing all of the evidence pertinent
to the trial court=s finding, we cannot say that
the evidence supporting the trial court=s
finding is so weak or contrary to the overwhelming weight of all the evidence
that it should be set aside and a new trial ordered. We overrule Liberty Mutual=s sole
issue.

                                             Conclusion

Having overruled Liberty Mutual=s issue,
we affirm the trial court=s judgment.

 

ANNE
GARDNER

JUSTICE

 

PANEL: GARDNER, WALKER,
and MCCOY, JJ.

 

DELIVERED:  August 31, 2009











[1]Burk has not appealed the
trial court=s finding that his
on-the-job back injury does not extend to his diabetes.





[2] Hershkowitz testified
that cauda equina syndrome is an abnormality in the nerve roots in the lower
spine, that a herniated disc is one of the causes of cauda equina syndrome, and
that the syndrome is named Acauda equina@ because the nerve roots in the lower spine look
like a horse=s tail.





[3] The electrodiagnostic
studies also revealed neuropathy in Burk=s upper extremities, which Hershkowitz suggested
was evidence that a person can have diabetic nerve damage without having
symptoms.