

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-08-444-CV

LIBERTY MUTUAL                                    APPELLANT
INSURANCE COMPANY

V.

ROY BURK                                          APPELLEE

------------

### FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## OPINION

------------

Liberty Mutual Insurance Company appeals the judgment for Roy Burk in its suit for judicial review of a decision from an Appeals Panel of the Texas Department of Insurance, Division of Workers' Compensation. Liberty Mutual contends that the evidence is legally and factually insufficient to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration. We affirm.

## Procedural Background

Burk suffered a work-related injury to his back in 1998. Although Liberty Mutual accepted the injury, it later disputed the extent of Burk's injury. Burk prevailed at a Contested Case Hearing ("CCH") on April 8, 2005, and an appeals panel affirmed the hearing officer's decision on June 23, 2005. Liberty Mutual then sought judicial review of the appeals panel decision by filing suit in Montague County.

Trial was to the court on October 25, 2007, during which Liberty Mutual argued that Burk's compensable back injury did not extend to his diabetes, polyneuropathy, and foot ulceration. The trial court entered judgment on October 27, 2008, that Burk's on-the-job back injury does not extend to diabetes but does extend to his polyneuropathy and foot ulcerations.[1] The appellate record does not include findings of fact or conclusions of law.

## Factual Background

Burk and Dr. Leonard Hershkowitz, Liberty Mutual's retained expert witness, testified at trial. Burk testified that he injured his back on December 16, 1998, while working on a drilling rig in South Texas, and that he had back surgery in March 1999. Burk also testified that according to his treating

---

[1] Burk has not appealed the trial court's finding that his on-the-job back injury does not extend to his diabetes.

physician, Dr. Malonis, the removal of a disc in his back "obliterated some nerve endings in [his] spine" and caused a lack of sensation in his feet and other problems. Burk reported to the designated doctor in December 1999 that he had continued, although improved, tingling in the bottoms of his feet.

Hershkowitz testified that Burk's March 1999 surgery was a two-level discectomy that included partial removal of a herniated disc between the fourth and fifth lumbar vertebrae. Burk's herniated disc caused impairment to the L5 nerve root, which Hershkowitz classified as a radiculopathy. Symptoms of a radiculopathy include pain or numbness (or both) on a particular area of the skin or weakness in particular muscles connected to the affected nerve root. Hershkowitz explained that the affected nerve root is often identified by tracing the affected skin area or weakened muscle to the connected nerve root in the spine.

Hershkowitz testified that the terms radiculopathy and neuropathy are used interchangeably, but that he does not believe the terms are actually interchangeable. Radiculopathy, according to Hershkowitz, is a nerve root injury closer to the spine and neuropathy is a nerve injury farther away from the spine. Many things can cause neuropathy, but he said diabetes and malnutrition are the two most common causes. Hershkowitz testified that diabetics frequently have neuropathy, that smoking aggravates diabetic

3

neuropathy, and that maintaining blood sugar better maintains the progression of diabetic neuropathy.

Burk testified that he had emergency surgery in September 2002 after experiencing increased back pain and an episode of paralysis. Hershkowitz testified that Burk's progressive back problems were consistent with radiculopathy and included symptoms that radiated into his legs, predominantly into his left lower extremity. The problems caused bladder and ambulation problems, and Burk was unable to perform his job. A large herniated disc, predominately at the L4-L5 interspace, compressed the nerve roots in the lower part of Burk's spine, leading to a diagnosis of cauda equina syndrome.[2]

The 2002 surgery involved a decompression laminectomy for a large recurrent herniation at L4-L5, a laminectomy and fusion at L3-L4 and L4-L5, and a fusion from L3 to L5. Hershkowitz testified that the cauda equina syndrome was a continuation of Burk's on-the-job back injury but opined that the 2002 surgery was successful.

Burk had continuing symptoms after the 2002 back surgery, including pain, burning, numbness, and weakness. The January 23, 2003 consultation

---

[2] Hershkowitz testified that cauda equina syndrome is an abnormality in the nerve roots in the lower spine, that a herniated disc is one of the causes of cauda equina syndrome, and that the syndrome is named "cauda equina" because the nerve roots in the lower spine look like a horse's tail.

report by Dr. Bixler lists weakness in Burk's legs "due to the neuropathic injury of the cauda equina syndrome." Burk reported to Dr. Bixler in April 2003 that his feet were getting cold on and off, so Dr. Bixler ordered electrodiagnostic studies to follow up on the complications. The studies revealed a nerve root problem involving the left and right lower extremities and generalized polyneuropathy. Dr. Bixler's narrative report states that the polyneuropathy is probably pre-existing and "familial." But the narrative report also states that the polyneuropathy made Burk at risk for poor recovery following the herniated disc, even though the polyneuropathy did not cause the herniated disc.[3]

In September 2006, Dr. Malonis treated Burk for a sore on his left foot. Burk previously had an ulcer on his right foot, and Hershkowitz testified that ulcerations in both feet is compatible with a diabetic condition.

Hershkowitz testified that he did not personally examine Burk but felt comfortable relying on the electrodiagnostic studies and offering opinions about the cause of Burk's polyneuropathy and foot ulcer. Hershkowitz also testified, however, that if Burk were his own patient, he would have interviewed a family member and done additional blood tests to look for undiagnosed causes.

---

[3] The electrodiagnostic studies also revealed neuropathy in Burk's upper extremities, which Hershkowitz suggested was evidence that a person can have diabetic nerve damage without having symptoms.

5

Hershkowitz testified that, in his opinion, there was no relationship between Burk's work injury and his polyneuropathy because Burk's external foot symptoms did not match the injured nerve roots and because Hershkowitz believes Burk's diabetes caused the polyneuropathy. Hershkowitz also relied on the adage that "common things happen commonly" and consequently, in his opinion, Burk's diabetes caused the right foot ulcer because this type of ulceration is very common with diabetes and peripheral neuropathy. Patients with diabetes and peripheral neuropathy have decreased sensation in their feet, meaning that even a small blister can be the source of an ulceration. Hershkowitz testified that he did not find literature suggesting a link between Burk's nerve root injuries and his foot problems but acknowledged that Dr. Malonis, Burk's treating doctor, disagreed with his opinion about the cause of the foot ulceration.

Hershkowitz further testified that, in his opinion, the cauda equina syndrome did not cause Burk's foot problems or neuropathy because Burk has an S1 radiculopathy and the nerve roots in S1 do not go to the part of the foot where Burk had problems. Hershkowitz testified that Burk's diabetes, not the cauda equina syndrome, caused Burk's foot problems and neuropathy.

On cross-examination, Hershkowitz agreed that the cauda equina syndrome was part of the compensable injury and explained that the cauda

6

equina syndrome meant that Burk's herniated disc caused abnormalities in certain nerve roots in the L4 and L5 area. The compromised nerve roots supply the legs, feet, and toes and caused symptoms of low-back pain, pain in the legs and groin area, and problems with Burk's bowel and bladder. Specifically, Hershkowitz agreed that Burk's cauda equina syndrome could cause him to have symptoms in his foot. Hershkowitz acknowledged that the heel, where Burk had his ulcer, is supplied by the nerve roots from S2 and L5 and that Burk had damage to L5.

The trial court, without objection from Liberty Mutual, took judicial notice of the hearing officer's decision from the CCH. The hearing officer's decision, which was affirmed by the appeals panel, states that Liberty Mutual's retained expert witness, Dr. William Gaines, testified at the CCH that many of Burk's symptoms could have been caused by the cauda equina syndrome. Hershkowitz acknowledged Dr. Gaines's CCH testimony but stated that he disagreed with the opinion.

## Discussion

Liberty Mutual contends that the evidence is legally and factually insufficient to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration.

7

**A. Workers' Compensation Act Appeals**

As Liberty Mutual did in this case, a party may appeal a final decision from an Appeals Panel of the Texas Department of Insurance, Division of Workers' Compensation to the courts for a modified de novo review. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 515 (Tex. 1995). Under this modified de novo review, all issues regarding compensability of the injury may be tried by the jury or court. *Id.* at 528. The court, although informed of the appeals panel decision, is not required to accord it any particular weight. Tex. Lab. Code Ann. § 410.304(b) (Vernon 2006); *Abilene Indep. Sch. Dist. v. Marks*, 261 S.W.3d 262, 268 (Tex. App.—Eastland 2008, no pet.). The fact finder "does not review [the appeals panel decision] for 'reasonableness,' but rather independently decides the issues by a preponderance of the evidence." *Garcia*, 893 S.W.2d at 531. The party challenging the appeals panel decision bears the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303 (Vernon 2006).

**B. Standard of Review**

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). Where

a reporter's record is filed, as it was in this case, the implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790. Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). "In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony." *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). As a reviewing court, "we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence." *Id.*

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more

9

than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In evaluating the legal sufficiency of the evidence to support a finding, "we must 'determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 912 (Tex. App.—Dallas 2008, no pet.) (quoting *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)). "We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not." *Id*. (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). If a party attacks the legal sufficiency of an adverse finding on which the party had the burden of proof, and there is no evidence to support the finding, we review all the evidence to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

When reviewing an assertion that the evidence is factually insufficient to support a finding on which the appealing party had the burden of proof, we set

10

aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## C. Sufficiency of the Evidence

As the party appealing the appeals panel decision, Liberty Mutual had the burden to prove by a preponderance of the evidence that Burk's work-related injury did not cause his polyneuropathy and foot ulceration. Tex. Lab. Code Ann. § 410.303; *see also Marks*, 261 S.W.3d at 268. Despite Liberty Mutual's burden of proof, Liberty Mutual argues there is no evidence to support the trial court's judgment because Burk did not offer testimony from a medical expert at trial. In doing so, Liberty Mutual cites cases for the proposition that expert medical testimony is required where the injury or condition is beyond the scope of common knowledge and experience of the fact finder. *See Schaefer v. Tex. Employers' Ins. Ass'n,* 612 S.W.2d 199, 202 (Tex. 1980); *Hernandez v. Tex. Employers Ins. Ass'n*, 783 S.W.2d 250, 253 (Tex. App.—Corpus Christi 1989, no writ). While the legal proposition is facially correct, Liberty Mutual appears

11

to ask us to apply the proposition against Burk, who did not have the burden of proof at trial, and hold that Burk presented no evidence that his work-related injury caused his polyneuropathy and foot ulceration. This we cannot do. Instead, our inquiry must focus on whether there is any evidence in the record to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration. *Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334.

The standard of causation in workers' compensation cases differs from the standard in other cases. *See Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 549 (Tex. App.—Austin 2002, pet. denied) (differentiating between "proximate cause" in negligence cases and "producing cause" in workers' compensation cases). Articulating the producing cause standard applicable to workers' compensation cases, the Fourteenth Court of Appeals recently stated:

> Courts liberally construe workers' compensation legislation to carry out its purpose of compensating injured workers and their dependents. Because of this liberal interpretation, a workplace accident or disease is considered to be a producing cause even if it is not a substantial factor in bringing about the injury, disability, or illness. Therefore, a workplace injury need not be the sole or primary cause in bringing about the disability or illness; rather, as long as the occupational injury is a producing cause of the disability or illness, there is a sufficient causal link under the workers' compensation scheme. An unrelated condition or injury may even be the primary factor in causing an employee's disability or death

12

and still not preclude a recovery of workers' compensation benefits. In addition, a pre-existing condition will not preclude compensation under the system as long as a workplace accident contributed to the injury in some amount. It is settled law in Texas that in a workers' compensation case, there may be more than one producing cause of an injury, incapacity, or death.

*Transcontinental Ins. Co. v. Crump*, 274 S.W.3d 86, 99–100 (Tex. App.—Houston [14th Dist.] 2008, pet. filed) (internal citations omitted); *see also INA of Tex. v. Howeth*, 755 S.W.2d 534, 536–37 (Tex. App.—Houston [1st Dist.] 1988, no writ). With these standards in mind, we review the record for any evidence to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration.

Burk's work-related injury required surgery in 1999 to repair a herniated disc between his fourth and fifth lumbar vertebrae. The herniated disc caused an impairment to the L5 nerve root, which can further cause symptoms of pain or numbness on a particular area of the skin or weakness in particular muscles connected to the affected nerve root. Burk testified that, according to his treating physician, Dr. Malonis, the removal of a disc in his back "obliterated some nerve endings in [his] spine" and caused a lack of sensation in his feet and other problems.

Burk later underwent emergency surgery in September 2002 for cauda equina syndrome, which was caused by a large herniated disc at the L4-L5

13

interspace that compressed the nerve roots in the lower part of Burk's spine. The nerve roots supply the legs, feet, and toes, and the impairment caused symptoms of low-back pain, pain in the legs and groin area, and problems with Burk's bowel and bladder. The heel, where Burk had his ulcer, is supplied by the nerve roots from S2 and L5. It was undisputed at trial that the cauda equina syndrome was a continuation of Burk's work-related injury.

Burk had additional complications after the 2002 surgery including weakness in his legs that Dr. Bixler linked to the cauda equina syndrome. Electrodiagnostic studies revealed a nerve root problem involving the left and right lower extremities and generalized polyneuropathy. Further, Liberty Mutual's retained expert witness at the CCH, Dr. Gaines, testified that many of Burk's symptoms could have been caused by Burk's cauda equina syndrome.

Liberty Mutual argues that the appeals panel decision is not evidence that can support the trial court's judgment because the appeals panel decision was not based on competent medical evidence and because it was not admitted into evidence. We disagree. First, Liberty Mutual did not object before the trial court took judicial notice of the appeals panel decision during the trial. Liberty Mutual therefore waived any objection that the appeals panel decision is not based on competent medical evidence. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1). Second, the appeals panel decision was evidence in the

case because the trial court took judicial notice of the appeals panel decision. Liberty Mutual attached the appeals panel decision to its original petition, so the appeals panel decision was included in the trial court's records in the case. "It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties." *Sierad v. Barnett*, 164 S.W.3d 471, 481 (Tex. App.—Dallas 2005, no pet.) (quoting *Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961)). Once the trial court took judicial notice of the appeals panel decision, it was evidence in the case that could potentially support the trial court's judgment. *Id.*; *see also ESIS, Inc. v. Johnson*, 908 S.W.2d 554, 560 (Tex. App.—Fort Worth 1995, writ denied) (holding that an appeals panel opinion is admissible as evidence under section § 410.306(b) of the labor code).

Liberty Mutual also argues that Dr. Hershkowitz's testimony was uncontroverted and therefore conclusive. "Uncontroverted expert testimony may be regarded as conclusive if the nature of the subject matter requires the jury to be guided solely by the opinion of experts and the evidence is otherwise credible and free from contradictions and inconsistency." *Truck Ins. Exch. v. Smetak*, 102 S.W.3d 851, 855 (Tex. App.—Dallas 2003, no pet.) (citing *Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 338). "However, an expert's

15

testimony may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness." *Id*.

In this case, Dr. Hershkowitz's testimony was internally inconsistent. For example, Dr. Hershkowitz testified on direct examination that there was no relationship between Burk's work injury and polyneuropathy because Burk's external foot symptoms did not match the injured nerve roots. On cross-examination, however, Hershkowitz testified that Burk's cauda equina syndrome could cause him to have symptoms in his foot, that the heel, where Burk had his ulcer, is supplied by the nerve roots from S2 and L5, and that Burk had damage to L5. In addition, Hershkowitz testified that he did not personally examine Burk and that if Burk were his own patient, he would have interviewed a family member and conducted additional blood tests to look for undiagnosed causes of Burk's problems. *See Flores v. Cuellar*, 269 S.W.3d 657, 661 (Tex. App.—San Antonio 2008, no pet.) ("Even if the nature of the subject matter [required] the trial court to be guided solely by the opinion of experts, the trial court could have properly concluded [the] expert opinions were not otherwise credible and free from contradictions and inconsistency."). We do not agree that Dr. Hershkowitz's testimony was conclusive in this case.

Based on the foregoing, after reviewing all of the evidence in the light favorable to the trial court's findings, crediting favorable evidence if a

16

reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's findings that Burk's work-related injury caused his polyneuropathy and foot ulceration.  Likewise, after considering and weighing all of the evidence pertinent to the trial court's finding, we cannot say that the evidence supporting the trial court's finding is so weak or contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. We overrule Liberty Mutual's sole issue.

### Conclusion

Having overruled Liberty Mutual's issue, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  August 31, 2009