

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00059-CV

---

NATIONAL COLLEGIATE                                                 APPELLANT
STUDENT LOAN TRUST 2006-2

V.

PABLO RAMIREZ                                                        APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 2014-001130-2

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant National Collegiate Student Loan Trust 2006-2 (National) appeals a take-nothing judgment rendered in its lawsuit against Appellee Pablo Ramirez for breach of contract and account stated related to Ramirez's alleged default on his student loan. In a single issue, National argues that the trial court

---

[1]See Tex. R. App. P. 47.4.

abused its discretion by excluding certain portions of evidence attached to a business records affidavit, which it complains prevented it from showing its damages from Ramirez's default on his student loan.  We affirm.

## II.  Procedural Background

National filed suit in March 2014 and moved for and obtained a default judgment in October 2014.  Ramirez subsequently moved to set aside the default judgment on the basis of defective service, and the trial court vacated the default judgment in December 2014.  The case went to a bench trial on January 15, 2016.  After National rested at the conclusion of its presentation of evidence,[2] the trial court granted a take-nothing judgment for Ramirez.  National did not request—and the trial court did not make—findings of fact and conclusions of law.

National raised its claims as an alleged assignee, pleading that "Plaintiff is the trust that currently holds these loans [sic], and is entitled to repaying of the loan and all applicable interest," and sued Ramirez for "Suit on Open & Stated Account/Debt/Breach of Contract," quantum meruit, and attorney's fees.  Thus, National assumed the burden to prove not only its claims but also its assignee status.[3]

---

[2]National attempted to nonsuit the case before resting, but the trial judge refused to permit it.  *But see* Tex. R. Civ. P. 162.  National does not complain of this ruling on appeal.

[3]To recover on an assigned cause of action, the party claiming the assigned rights must prove a cause of action existed that was capable of

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). A valid contract requires an offer, an acceptance in strict compliance with the offer's terms, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding, along with consideration. *Kang v. Song*, No. 02-15-00148-CV, 2016 WL 4903271, at *8 (Tex. App.—Fort Worth Sept. 15, 2016, no pet.) (mem. op.). A party is entitled to relief under the common law cause of action of account stated when (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness. *Morrison v. Citibank (South Dakota) N.A.*, No. 02-07-00130-CV, 2008 WL 553284, at *1 (Tex. App.—Fort Worth Feb. 28, 2008, no pet.)

---

assignment and the cause was in fact assigned to the party seeking recovery. *Tex. Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 217 (Tex. App.—Fort Worth 1994, writ denied). An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, but the plaintiff must prove that the defendant was a party to an enforceable contract with either it or with a third party who assigned its cause of action to the plaintiff. *Rolen v. LVNV Funding, LLC*, No. 02-09-00304-CV, 2010 WL 1633402, at *2 (Tex. App.—Fort Worth Apr. 22, 2010, no pet.) (mem. op.); *see Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, No. 03-14-00738-CV, 2017 WL 279598, at *3 (Tex. App.—Austin Jan. 20, 2017, no pet. h.) (mem. op.) ("Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff.").

(mem. op.). A plaintiff seeking to recover in quantum meruit under an implied promise to pay must show that (1) valuable services or material were furnished; (2) for the defendant; (3) the services or materials were accepted, used, and enjoyed by the defendant; and (4) the circumstances reasonably notified the defendant that the plaintiff was expecting to be paid by the defendant for the services or materials. *Wilson v. Andrews*, No. 02-06-00429-CV, 2007 WL 2460356, at *3 (Tex. App.—Fort Worth Aug. 31, 2007, pet. denied) (mem. op.). To recover as an assignee under any of these three causes of action, National was required to prove not only that a cause of action existed that was capable of assignment but also that the cause of action was in fact assigned to it. *See Tex. Farmers Ins.*, 880 S.W.2d at 217; *see also Rolen*, 2010 WL 1633402, at *2.

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78, 79 (Tex. App.—Fort Worth 2010, no pet.).[4] The judgment must be affirmed if it can be upheld on any legal theory that finds support in the record. *Rosemond*, 331 S.W.3d at 767; *see also Liberty Mut. Ins.*

---

[4]When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). However, National does not raise any legal or factual sufficiency challenges.

4

*Co.*, 295 S.W.3d at 777 (stating that the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence).

### III. Analysis

In its sole issue, National argues that the trial court abused its discretion by excluding from evidence the loan financial activity report and the loan payment history record that were attached to its business records affidavit. National contends that such error prevented it from proving its damages from Ramirez's default on his student loan. Ramirez responds by pointing out that even assuming that the trial court abused its discretion by excluding portions of National's exhibit, the exclusion was harmless because, among other things, National's evidence was insufficient to support the other essential elements on which National had the burden of proof. *See* Tex. R. App. P. 44.1(a).

Approximately forty-five days prior to trial, National filed its "Notice of Filing of Plaintiff's Affidavit and/or Other Trial Related Documents," giving notice "to all parties that it intends to rely upon said documents to establish one or more elements of its claims and/or defenses." At the beginning of the bench trial, National sought to introduce the affidavit and business records as "Plaintiff's Exhibit 1," stating that

> [i]t contains the affidavit and verification of account of Plaintiff's custodian of records, note disclosure statement, credit agreement signed by the Defendants[5] with the applicable cosignor notices,

---

[5]National initially sued both Ramirez and another defendant, but it nonsuited the other defendant in January 2016.

5

pool supplement and deposit and sale agreement illustrating the chain of title to the loan, loan financial activity reports, deferment/forbearance details and loan payment history report.[6]

The affidavit purported to sponsor an exhibit containing thirty-six documents.

Ramirez objected to the form of the business records affidavit and asked that extraneous hearsay testimony contained within paragraphs 3 and 6 be stricken prior to admission. After the trial court sustained Ramirez's objections to paragraphs 3 and 6, National's counsel responded, "Your Honor, that's fine with 3 and 6," but then asked that two sentences from paragraph 6—"Attached hereto and incorporated as Exhibit 'A' are 36 pages of business records," and "Within Exhibit 'A' is a true copy of the underlying Credit Agreement/Promissory Note"— be admitted. The trial court agreed to admit those two sentences but excluded the remainder of paragraph 6 and all of paragraph 3.[7] National does not complain of these rulings in its appeal.

---

[6]The affidavit itself, by Graham Hord, "Legal Case Manager," stated that he was employed by Transworld Systems Inc., National's designated custodian of records "pertaining to the Defendants' education loan(s) forming the subject matter of the above-captioned Complaint."

[7]Paragraph 3 stated that the lawsuit had arisen "out of an unpaid loan or loans owed by" Ramirez and that Ramirez had "failed, refused, and /or neglected to pay the balance or balances pursuant to the agreed repayment schedule or schedules." The portions of paragraph 6 that were excluded provided, in pertinent part, that no payment had been made on the loan since April 21, 2011, and that Ramirez owed $47,817 (principal and accrued interest) as of November 3, 2015.

Ramirez then objected to the loan financial activity report and the loan payment history record, and the trial court sustained his objections. National did not seek to present by other means any of the evidence that was excluded.

National's documents included a document entitled "2006-2 Pool Supplement Charter One Bank, N.A.," which referenced a note purchase agreement by and between First Marblehead Corporation and Charter One Bank, N.A., in which Charter One Bank, N.A. assigned to National Collegiate Funding LLC the student loans set forth on "the attached Schedule 2." The agreement further provided that National Collegiate Funding LLC "will sell the Transferred Loans to The National Collegiate Student Loan Trust 2006-2." Schedule 1 of that document lists a variety of note purchase agreements between First Marblehead Corporation and financial entities and programs between 2002 and 2005 but does not list "Charter One Bank, N.A." Instead, it lists "the Program Lender for the Charter One Referral Loan Program (including loans in the UPromise, Collegiate Solutions, College Board and Axiom Alternative Loan Programs)" and it lists separately "the Program Lender for Nextstudent." None of these loan program names match the name of the program on the purported loan's note disclosure statement. The last page of that set of documents includes a header for "Schedule 2" at the bottom of the page, but nothing listed for "Schedule 2" appears on the next or any subsequent page.[8]

---

[8]The header of the 2006-2 Pool Supplement states "Page 1 of 4" and lists part of a website address and a date in the footer. The header for "Schedule 2"

7

National's documents also include a deposit and sale agreement between it and National Collegiate Funding LLC referring to the sale "of certain student loans," which were "listed on Schedule 2 to each of the Pool Supplements set forth on <u>Schedule A</u> attached hereto." "<u>Schedule B</u> attached hereto" contains a list of the related Student Loan Purchase Agreements.

The name of the purported loan at issue is "Next Student Undergraduate Loan," and the bottom of the disclosures page included the footer, "NSTCDP Next Student UGrad Loan," but Schedule A to the deposit and sale agreement, listing the "Pool Supplements," does not list either of these names. Instead, it references,

> Charter One Bank, N.A., dated June 8, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, *NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program*, SAF Alternative Loan Program, START Education Loan Program, and UPromise Alternative Loan Program. [Emphasis added.]

---

begins at the bottom of "Page 4 of 4," and the next page lists no page number and does not include the web address of the preceding four pages. Therefore, it does not appear to be part of the "<u>Schedule 2</u>" referred to in the 2006-2 Pool Supplement.

Schedule B lists Charter One Bank, N.A. student loan purchase agreements, but it also lists "Charter One's NextStudent Alternative Loan Program" and "Charter One's NextStudent Private Consolidation Loan Program," and not the name of the purported loan at issue here.

National offered no other evidence at trial to support its claims.

On the record before us, the trial court reasonably could have concluded, among other things, that National had failed to demonstrate that it was the holder of the note that National's exhibit purported to show had been made between Ramirez and Charter One Bank, N.A., of Albany, New York, as a "Next Student Undergraduate Loan." Because in the absence of findings and conclusions, the trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the record, we therefore affirm the trial court's judgment without needing to reach National's sole issue complaining of the exclusion of evidence related to damages. *See Rosemond*, 331 S.W.3d at 767; *Liberty Mut. Ins. Co.*, 295 S.W.3d at 777; *see also* Tex. R. App. P. 44.1(a), 47.1; *Rolen*, 2010 WL 1633402, at *6 (concluding that there was a lack of evidence to show assignee status).

## IV. Conclusion

For these reasons, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

9

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DELIVERED:  March 9, 2017