

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00138-CV

_____

DIANA JO FLETCHER AND GARY WHITAKER, INDEPENDENT EXECUTORS OF THE ESTATE OF TORCHY BOB WHITAKER, DECEASED, Appellants

V.

GENEVA MAE WHITAKER, Appellee

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 183,750-B

Before Sudderth, C.J.; Kerr and Pittman, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

This case involves a dispute between two of Torchy[1] Bob Whitaker's siblings, Diana Jo Fletcher and Gary Whitaker, and Bob's sister-in-law Geneva Mae Whitaker. After Bob's death, Diana and Gary, acting as independent executors of Bob's estate, sued Geneva claiming that she forged Bob's signature on a deed and converted his property. Geneva countersued Bob's estate and Gary, claiming that Gary converted $25,000 from Bob and Geneva's joint bank account while Bob was still alive. After a bench trial, the trial court entered judgment in Geneva's favor against Diana and Gary, jointly and severally, on her conversion claim. (Diana and Gary prevailed on their forged-deed claim; Geneva has not appealed that adverse judgment against her.) In a single issue, Diana and Gary argue that the evidence is legally insufficient to support the trial court's judgment on Geneva's claim. We will affirm.

## Background

Geneva married Toby Whitaker, another of Bob's siblings, around 1990, when Toby was 55 and Bob was 53 years old. For their entire marriage, which ended with Toby's 2015 death, Geneva helped Toby care for Bob, who as a young man had suffered brain damage from an accident while changing a tire. Bob never married and had no children.

---

[1]So spelled in the appellate briefing, although the record below suggests that "Torchey" was the correct spelling. In any event, he went by "Bob," the name we will use.

In December 2009, Bob executed a gift deed conveying his home in Iowa Park, Texas, to Toby and Geneva but retaining a life estate in the property. In May 2014, Toby, Bob, and Geneva opened a "Multiple-Party With Right of Survivorship" account at American National Bank & Trust. According to the bank employee who opened the account and who testified at trial, it was a joint account with "multiple[-]party survivorship," which meant that Bob, Toby, and Geneva jointly owned the account; that each of them had "full rights to access" the funds in the account; that only one of their signatures was required to withdraw funds; and "that when one of the people involved in th[e] account pass away, the other people still have access to the account."

Geneva testified that all the money in the account had come from Bob and that she and Toby had never deposited any money into it. She further testified that she and Bob had never had an understanding about how the money was to be used, but that she and Toby had used it for Bob's bills and medical care. And while she never intended to use the account for herself, she did pay $7,939.50 from the account for Toby's funeral when he died in February 2015.

Gary took over Bob's care after Toby died. On May 8, 2015, Bob executed a statutory durable power of attorney appointing Gary as Bob's attorney-in-fact. Among other powers, Bob authorized Gary to engage in banking and other financial transactions on his behalf.

Later that same day, May 8, Gary went to the bank and withdrew $25,000 from the joint account using the power of attorney Bob had just signed. The same bank

employee who had opened the account testified that she issued a $25,000 cashier's check payable to Bob and gave it to Gary. Both Bob and Gary endorsed the check, which Gary then deposited into his checking account; he in turn gave Diana nearly $10,000. Gary's withdrawal left $163 in the joint account.

Bob died on July 7, 2015, at the age of 78. Upon his death, his house passed to Geneva under the gift deed's terms. Bob's will was admitted to probate, and Diana and Gary were appointed as co-independent executors.[2] Believing that Bob's signature on the gift deed was forged and that Geneva had wrongfully withdrawn money to pay for her husband's funeral and burial expenses, Diana and Gary—as co-independent executors of Bob's estate—sued Geneva seeking a declaration that the gift deed was void and the return of Toby's funeral-expense money. Geneva answered and countersued for conversion, seeking the return of at least half the $25,000 Gary withdrew from the account and, if the trial court set aside the gift deed, reimbursement from Bob's estate of the more than $3,000 she claimed she had invested in the property.

After a day-long bench trial, the trial court found that Bob had not signed the gift deed, declared it void, and found that Diana and Gary owned Bob's home. The trial court also found that Geneva did not wrongfully withdraw money from the account to pay for her husband's funeral because "that [] expenditure was from an account jointly

---

[2]In addition to signing the power of attorney, Bob also executed a will in May 2015 appointing Diana and Gary as executors of his estate and designating them as equal beneficiaries.

owned by [her], and [] she bore no fault in making such payment." The trial court also entered judgment in Geneva's favor and against Diana and Gary, jointly and severally, for $29,121.44 "[a]s damages and reimbursement, for reasons recited by the Court on the Record," which were:

> The Court finds that [Geneva is] entitled to be reimbursed for the $4,121.44 she's expended on the house. That's for the benefit of Gary Whitaker and Dianna.[3]
>
> And, further, the Court finds that Gary Whitaker violated the fiduciary duties of his Power of Attorney when he removed $25,000 from the account of Bob and used it for his own benefit and for the benefit of Dianna; therefore, those amounts are awarded to Ms. Geneva Whitaker, the $25,000.

On appeal, Diana and Gary challenge the $25,000 the trial court awarded to Geneva.

## Standard of Review

In a bench trial in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78, 79 (Tex. App.—Fort Worth 2010, no pet.). But when a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising evidentiary-sufficiency issues. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort

---

[3]As with "Torchey," the record below suggests that "Dianna" is the correct spelling. But because "Dianna" is spelled "Diana" in the appellate briefing, we use "Diana" in this opinion.

Worth 2009, no pet.). If such issues are raised, we apply the same standard of review as in examining jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Liberty Mut. Ins. Co.*, 295 S.W.3d at 777. We must affirm the judgment if it can be upheld on any legal theory supported by the record. *Rosemond*, 331 S.W.3d at 767; *see also Liberty Mut. Ins. Co.*, 295 S.W.3d at 777 (stating that the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence).

We may sustain a legal-sufficiency challenge only when (1) the record is wholly devoid of evidence of a vital fact, (2) legal or evidentiary rules bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

**Analysis**

Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with one's rights. *Green Int'l, Inc. v. Solis*, 951 S.W.2d

6

384, 391 (Tex. 1997). To establish her conversion claim, Geneva had to prove that (1) she owned or had possession of the property or was entitled to possession; (2) Gary and Diana unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, Geneva's rights as an owner; (3) Geneva demanded return of the property; and (4) the defendants refused to return it. *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.). Money is subject to conversion only when it can be identified as a specific chattel but not if it is an indebtedness that can be discharged by the payment of money. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied). To qualify as a specific chattel, the money must be (1) delivered for safekeeping, (2) intended to be kept segregated, (3) substantially in the form in which it is received or in an intact fund, and (4) not the subject of a title claim by its keeper. *Id.* at 419–20 (holding that son who withdrew funds from his mother's investment accounts without her consent committed conversion).

In their only issue, Diana and Gary contend the evidence is legally insufficient to show that they unlawfully and without authorization assumed or exercised control over Geneva's property to the exclusion of, or inconsistent with, her rights as owner. Diana and Gary do not dispute that Gary withdrew $25,000 from the joint account. But, they argue, there was no conversion because (1) Geneva did not own the account funds because Bob was the sole source of them, and (2) the withdrawal was legal and

authorized because the power of attorney allowed Gary to undertake banking transactions on Bob's behalf. We address each of these arguments in turn.

To prevail on her conversion claim, Geneva had to prove that she owned the funds, had legal possession of them, or was entitled to possess them. *See Khorshid*, 257 S.W.3d at 759. On appeal, Diana and Gary argue only that Geneva did not *own* the funds in the joint account; they do not challenge the trial court's implied finding that Geneva, as a party to the joint account, had a right to *possess* those funds. As noted, the bank employee who opened the joint account testified that Geneva was a joint owner, that each joint owner on the account had "full rights to access" the funds, and that only one of their signatures was required to withdraw funds.[4] *See* Tex. Est. Code Ann. § 113.004(2) (West Supp. 2018) ("'Joint account' means an account payable on request to one or more of two or more parties, regardless of whether there is a right of survivorship."), § 113.004(3) (West Supp. 2018) (defining "multiple-party account" to include joint accounts), § 113.002 (West 2014) (providing that "'party' means a person who, by the terms of a multiple-party account, has a present right, subject to request, to payment from the account"). We conclude that this is some evidence that Geneva had the right to possess the joint account's funds.

Geneva also had to prove that Gary and Diana unlawfully and without authorization assumed and exercised control over the funds to the exclusion of, or

---

[4]The account agreement was not introduced into evidence.

inconsistent with, Geneva's rights. *See Khorshid*, 257 S.W.3d at 759. Gary and Diana argue that Gary lawfully withdrew the funds from the joint account using the power of attorney—the validity of which Geneva does not dispute—and point out that Bob endorsed the cashier's check. But Gary admitted at trial that when he withdrew the money, he knew (1) that the account was a joint account with right of survivorship, (2) that Geneva had full access to the account, and (3) that she would own the funds when Bob died. Gary further admitted that he used the power of attorney to withdraw the money to ensure that Geneva did not get the money and that he deposited the check into his own checking account, which Bob was not on. Finally, Gary admitted that the "Inventory, Appraisement, and List of Claims" he verified and filed in the probate proceedings accurately stated that Bob died owning no cash because Gary had withdrawn the money from the joint account and had deposited it into his own account. There was no evidence that either Gary or Diana had used the funds for Bob's care in the two months between Gary's withdrawal and Bob's death.

Gary does not dispute that he owed Bob a fiduciary duty by virtue of the power of attorney. *See Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) (stating that persons holding a power of attorney owe fiduciary duty to transferor of that power); *see also* Tex. Est. Code Ann. § 751.101 (West Supp. 2018). Nor does he dispute that he breached his fiduciary duty by withdrawing the money and using it for his and Diana's benefits. From the evidence, the trial court could have reasonably concluded that when Gary withdrew the money from the joint account,

9

Gary was not acting in Bob's interests but was using the power of attorney to wrongfully exercise dominion and control over the money to the exclusion of, or inconsistent with, Geneva's rights.

Accordingly, reviewing all the evidence in the light most favorable to the trial court's implied findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that the evidence legally sufficed to support the trial court's judgment on Geneva's conversion claim. We overrule Diana and Gary's only issue.

## Conclusion

Having overruled Diana and Gary's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  October 11, 2018