

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-20-00354-CV

_____

BERCAT MANAGEMENT, LLC, Appellant

V.

JOSEPH MURPHY AND TAYLOR MURPHY, Appellees

_____

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2019-007688-3

_____

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Bercat Management, LLC, appeals from the trial court's judgment in favor of Appellees, Joseph and Taylor Murphy, in a residential lease dispute over the return of the Murphys' $1,650 security deposit.  Bercat first challenges the legal and factual sufficiency of the evidence supporting the return of $1,000 of the security deposit to the Murphys, plus court costs.  Second, it challenges the trial court's determination that the Murphys were the prevailing parties, arguing instead that the Murphys should have taken nothing and that Bercat should be awarded attorney's fees.  Because we hold that the evidence is legally and factually sufficient to support the return of $965 of the security deposit, we affirm the trial court's judgment as modified.[1]

## II.  BACKGROUND

### A.  Factual Background

#### 1.  The Murphys' Tenancy

For approximately two years and three months, the Murphys leased a house from Bercat.  Their tenancy commenced on October 19, 2016, and, after a series of

---

[1]We need not address Bercat's second challenge as it rests on the argument that it is the prevailing party and necessarily fails in light of our holding on its first issue. *See* Tex. R. App. P. 47.1.

extensions, expired on January 31, 2019. The Murphys paid a $1,650 security deposit at the commencement of the lease.

When the Murphys moved out of the property, a dispute arose over the security deposit. After Bercat performed an inspection of the property, it informed the Murphys that it was withholding a portion of the deposit for three items: (1) costs to repair and paint interior walls in the amount of $1,400; (2) a late fee of $35; and (3) cleaning costs of $174. Bercat mailed a $41 refund check to the Murphys.

**2. Lease Provisions**

The Murphys' lease was a standard residential lease promulgated by the Texas Association of Realtors. Among other provisions, the tenant was prohibited from making holes in the walls, except for "a reasonable number of small nails" to hang pictures in sheetrock. The landlord could deduct from the security deposit "reasonable charges," which included costs to repair damage beyond normal wear and tear, costs to clean the property, costs to restore walls or any unapproved alterations, and unpaid late charges.

Upon move-out, the tenant was to surrender the property "in the same condition as when received, normal wear and tear excepted." "Normal wear and tear" was defined as "deterioration that occurs without negligence, carelessness, accident, or abuse." The prevailing party in any legal proceeding brought pursuant to the lease was permitted to recover attorney's fees, interest, and costs from the nonprevailing party.

Additionally, a lease addendum provided certain move-out guidelines. Most relevant were the requirements to have the property professionally cleaned, to remove stains and furniture marks from the walls, and to fill and paint nail holes with matching paint.

## B. Procedural Background

In March 2019, the Murphys filed a small claims petition with the justice court seeking a refund of their security deposit. The Murphys sought $1,650 in relief for "Refund of Deposit – Retained $1,609 for painting interior outside of 'normal wear & tear' which is incorrect, evidenced by photos taken at time of move out." Bercat included a request for attorney's fees in its answer. On September 3, 2019, the justice court entered judgment in favor of the Murphys for $1,435, plus interest and court costs.

Bercat appealed the justice court's judgment to the county court at law, where the case was tried de novo to the bench.[2] The Murphys proceeded pro se, and Bercat was represented by counsel. After trial, the court entered judgment in favor of the Murphys for $1,000, court costs, and interest. It concluded that the Murphys were the prevailing parties and, thus, denied Bercat's request for attorney's fees. No findings of fact or conclusions of law were requested or filed. This appeal followed.

---

[2]Tex. Civ. Prac. & Rem. Code Ann. § 51.001 ("In a case tried in justice court in which the judgment or amount in controversy exceeds $250, exclusive of costs, or in which the appeal is expressly provided by law, a party to a final judgment may appeal to the county court.").

4

## III.  DISCUSSION

### A.  Sufficiency of the Evidence

Bercat asserts that the evidence is legally and factually insufficient to support the trial court's judgment awarding $1,000 of the security deposit to the Murphys. Specifically, Bercat argues that conclusive and uncontroverted evidence established that it reasonably withheld portions of the deposit for (1) costs to repair and paint the walls in the amount of $1,400; (2) a late fee of $35; and (3) professional cleaning costs of $174.

#### 1.  Standard of Review

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the legal and factual sufficiency of the evidence to support the judgment. *Id.* We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.*; *Liberty Mut. Ins. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Liberty Mut.*, 295 S.W.3d at 777. Because the factfinder is the sole judge of the witnesses'

5

credibility and the weight to be given to their testimony, it may accept or reject all or any part of their testimony and resolve any conflicts or inconsistencies therein. *Liberty Mut.*, 295 S.W.3d at 777.

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241. We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). If no evidence supports the finding, we then examine the entire record and sustain the issue only if the contrary position is established conclusively as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241.

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*,

6

715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

## 2. Law Governing the Return of Security Deposits

Under the Property Code, a landlord "shall refund a security deposit to the tenant on or before the 30th day after the date the tenant surrenders the premises." Tex. Prop. Code Ann. § 92.103. "Before returning a security deposit, the landlord may deduct from the deposit damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease" but "may not retain any portion of a security deposit to cover normal wear and tear." *Id.* § 92.104. "'Normal wear and tear' means deterioration that results from the intended use of a dwelling, including . . . breakage or malfunction due to age or deteriorated condition, but the term does not include deterioration that results from negligence, carelessness, accident, or abuse . . . by the tenant . . . ." *Id.* § 92.001(4).

With limited exceptions, if the landlord retains any part of the security deposit, the landlord must give the tenant a written description and an itemized list of all deductions along with the balance of the deposit. *Id.* § 92.104. "In an action brought by a tenant under [Subchapter C regarding security deposits], the landlord has the burden of proving that the retention of any portion of the security deposit was reasonable."[3] *Id.* at 92.109(c).

---

[3]The Property Code allows a plaintiff to recover $100, treble damages, and reasonable attorney's fees if the landlord acted in bad faith by failing, within 30 days

7

It may be reasonable for a landlord to retain some or all of the security deposit if

> (1) the tenant is legally liable under the lease or as a result of breaching the lease; (2) the damages did not exist before the tenant leased the premises; or (3) the damages or charges are equal to or in excess of the security deposit or the amount deducted from the security deposit.

*Pulley*, 198 S.W.3d at 429; *see also Brand v. Degrate-Greer*, No. 02-15-00397-CV, 2017 WL 1756542, at *5 (Tex. App.—Fort Worth May 4, 2017, no pet.) (mem. op.) (holding that landlord's $129 deduction from security deposit was reasonable where tenant repaired a toilet without first providing written notice to landlord as required by Property Code and tenant subsequently deducted this amount from rent payment); *Johnson v. Waters at Elm Creek*, L.L.C., 416 S.W.3d 42, 49 (Tex. App.—San Antonio 2013, pet. denied) (holding that deductions for pet damage and painting were reasonable after trial court weighed and resolved conflicting testimony regarding condition of premises).

---

of surrender, to refund the deposit or provide an itemization of the deductions. Tex. Prop. Code Ann. § 92.109. The trial court stated that it saw no evidence of bad faith by Bercat, and bad faith was not raised for our review. Thus, our analysis rests solely on whether the evidence was sufficient to support the trial court's implied finding that it was reasonable for Bercat to retain only $650 of the security deposit. *See Pulley v. Milberger*, 198 S.W.3d 418, 429 (Tex. App.—Dallas 2006, pet. denied) (citing Tex. Prop. Code Ann. § 92.109(c) for proposition that landlords must prove security deposit deductions are reasonable even in the absence of bad faith).

### 3. Analysis

#### a. Costs to Repair and Paint the Walls

Bercat asserts that the evidence was legally and factually insufficient to support any award to the Murphys, challenging the trial court's implied finding that it was reasonable for Bercat to withhold only $650 to repair and paint the walls. We disagree.

At trial, the condition of the walls at move-out was shown through photographs from both parties and video evidence from Bercat taken nearly thirty days after move-out. Many of the walls contained only minimal defects (e.g., one or two nail holes or scuff marks). However, two walls bore significantly more damage, as the trial court noted at the trial's conclusion—one bedroom wall contained at least thirty patched nail holes, and another in the family room was damaged by a television wall mount that had been removed.

The contractor who painted and repaired the damage testified that he was forced to paint every interior wall of the residence because each had at least "some scuffs or marks on them" and any attempt to wipe them clean would have resulted in removing the paint and texture altogether. He further characterized the patched holes as "done terribly," necessitating that he re-sand and fix them. Both the contractor and Bercat's property manager opined that the damage to the residence exceeded normal wear and tear. Bercat paid the contractor $1,725 for the work.

9

Taylor Murphy testified that the Murphys treated the residence with the "utmost respect" and that he was familiar with the standard for normal wear and tear. He admitted to hanging artwork "all over the house," but stated that they had patched the "major holes" before moving out and had left the home in "good condition."

Bercat contends that the opinions of the contractor and property manager constituted undisputed and conclusive expert testimony on the issue of normal wear and tear. Expert testimony, though, is only conclusive on an issue when it is uncontradicted and "the nature of the subject matter requires the [factfinder] to be guided solely by the opinions of experts . . . ." *Liberty Mut.*, 295 S.W.3d at 779 (quoting *Truck Ins. Exch. v. Smetak*, 102 S.W.3d 851, 855 (Tex. App.—Dallas 2003, no pet.)). The subject matter of house repairs does not require the guidance of an expert. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) ("We do not believe the subject of house repairs to be one for experts or skilled witnesses alone."). Further, "an expert's testimony may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness." *Liberty Mut.*, 295 S.W.3d at 779-80 (quoting *Truck Ins. Exch.*, 102 S.W.3d at 855). Thus, the trial court was not bound by the opinions of Bercat's purported experts and could consider all admitted photographs, video, and testimony, assess the credibility and weight to be given to each, and resolve any inconsistencies. *Id.* at 777.

At the conclusion of trial, the trial court explained on the record that it thought the scuffs and damage in certain pictures appeared to constitute normal wear and tear

10

but opined that the damage to the family room and one of the bedrooms was beyond normal wear and tear. The court voiced concerns that the cleaning and painting occurred more than thirty days after the Murphys moved out and that the amounts deducted by Bercat for these items were based on estimates rather than actual costs. It determined that only $650 of the $1,400 requested by Bercat was "a reasonable amount to repair not normal wear and tear."

Based on this record, we conclude that the evidence is legally and factually sufficient to support the trial court's implied finding that it was reasonable for Bercat to retain only $650 of the security deposit for costs to fix the damage to the walls in excess of normal wear and tear.

### b. Late Fee

Bercat further asserts that its evidence established the validity of the $35 late fee. We agree.

The evidence supports Bercat's contention that the Murphys made a late rent payment in February 2018. In its itemization of security deposit form, Bercat noted a deduction for "Late Fee 2/5/18 $35." The lease states that if the landlord does not "actually receive" a rent payment in full by the third day of each month at 11:59 p.m., the tenant will be charged an initial late fee of $25 and an additional fee of $10 per day until all outstanding charges are paid. Bercat admitted into evidence a February 4, 2018 email from "Taylor" to a Bercat representative which stated:

Hey Cathy, Ive tried yesturday and today to send the money through my frost like I normally do and I think something is not working with their system. Ill call first thing in the am and see why its not working. If they can't fix it ill go get a money order and bring it to you.

[Errors in original.]

Finally, Taylor Murphy testified as to the existence of the late fee and, rather than dispute its validity, stated:

> The late fee she's saying is from February of the year before, and so I don't understand why she didn't ask for that late fee that whole year, or when we re-signed the three-month lease, she didn't go up on the rent and she didn't ask for that late fee.

Beyond the trial evidence in support of the late fee, the Murphys failed to contradict the late fee in their appellate brief. The Rules of Appellate Procedure require that "in a civil case, the court will accept as true the facts stated [in the Appellant's brief] unless another party contradicts them." Tex. R. App. P. 38.1(g).

Bercat's appellate brief states that a late fee was assessed against the Murphys because their February 2018 rent payment was not made until February 5, 2018. Rather than dispute the late fee in their brief, the Murphys state that their tenancy "proceeded without incident except for minor repair requests and a single late payment which fee of $35 was deducted from the deposit refund." They add that Taylor Murphy's testimony "did not contest the late fee charge assessed in February of 2018, only that he did not understand why it was not requested earlier." Thus, we will accept as true the fact that the Murphys made a late payment of rent in February 2018.

For these reasons, we conclude that the evidence establishes the $35 late fee deduction by Bercat.

### c. Professional Cleaning Costs

Bercat deducted $174 of the security deposit for professional cleaning but actually paid only $162.38 for the cleaning, which occurred six weeks after the Murphys moved out. Bercat challenges the sufficiency of the evidence to support the trial court's judgment for the Murphys, arguing that it deducted less than its actual costs for repairs from the security deposit and that this cleaning overcharge was offset by the lower rate it charged for other repairs. Again, we disagree.

It is undisputed that the lease required the Murphys to have the residence professionally cleaned upon move-out. Taylor Murphy testified that they did, in fact, have the residence professionally cleaned on January 31, 2019. Bercat's property manager contended that certain portions of the residence were not clean upon the Murphys moving out. He provided a receipt showing that Bercat paid $162.38 for a professional service to clean the residence on March 15, 2019—six weeks after the Murphys moved out.

The trial court resolved this conflicting evidence in the Murphys' favor, and we will not substitute our judgment for that of the trial court on credibility determinations. *Liberty Mut.*, 295 S.W.3d at 777. Accordingly, we conclude that the evidence is legally and factually sufficient to support the trial court's judgment with

13

regard to the cost of repairs, the home's cleanliness at move-out, and any offset for the discrepancy in the cost of the professional cleaning.

## IV.  CONCLUSION

Having sustained a portion of Bercat's issue, we modify the trial court's judgment to reflect a return of $965 of the security deposit to the Murphys and affirm the judgment as modified.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  October 28, 2021