

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00224-CV

_____

JOHN ELLIS, Appellant

V.

DALLAS AREA RAPID TRANSIT, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-280578-15

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

In this workers' compensation case, John Ellis appeals the trial court's judgment affirming the Texas Department of Insurance's decision regarding the extent of Ellis's compensable injury. Ellis argues that the trial court erred by requiring expert medical evidence causally linking his alleged injuries to his on-the-job accident, and he claims that this error resulted in a legally insufficient judgment. We affirm.

## I. Background

In May 2014, Ellis was involved in a motor-vehicle accident while driving a bus for Dallas Area Rapid Transit (DART). DART provided workers' compensation coverage for employees, so Ellis filed a claim with the Texas Department of Insurance's Division of Workers' Compensation (TDI).

In the year that followed, Ellis visited more than seven doctors for pain in his neck, shoulder, arm, hand, and wrist. Ellis claimed that the 2014 collision aggravated preexisting injuries to his rotator cuff and wrist, both of which he traced to a prior on-the-job accident in 2013. Although the medical records presented at trial showed that Ellis reported a right-shoulder rotator-cuff tear and a right-wrist ganglion cyst as preexisting conditions, none of the medical records causally linked the aggravation of his shoulder or wrist conditions to the 2014 collision.

### A. Medical History

Ellis visited the emergency room the night of his on-the-job accident but was discharged with "no significant acute injuries" other than cervical strain, right-

2

shoulder strain, and right-wrist strain. The following day, Dr. Lawus-Scurry examined Ellis and took x-rays of his shoulder and wrist. The doctor found "no significant acute injuries" diagnosing only a cervical-spine muscle spasm and a sprained or strained neck, elbow, forearm, and shoulder.

Ellis sought a second opinion from Dr. Powell, who concluded that Ellis had shoulder strain, cervical strain, wrist sprain, and trapezius strain. Approximately one month later, Dr. Powell examined Ellis again and found that Ellis had regained full range of motion in his shoulder, wrist, neck, and spine.

Dr. Ford then conducted a peer review of Ellis's file. In his report, Dr. Ford aggregated and summarized Ellis's then-current diagnoses: "a cervical strain, a ganglion cyst of the wrist, a shoulder strain, a trapezius strain, a wrist and forearm sprain/strain, multilevel cervical stenosis, shoulder impingement, and a rotator cuff tear." Dr. Ford noted that MRIs conducted in 2013—before the 2014 collision, obviously—found "a partial tear of the supraspinatus tendon" in Ellis's right shoulder and "questionable tenosynovitis within the carpal tunnel" in his right wrist. Of Ellis's diagnoses, Dr. Ford concluded that "the alleged work-related [incident] was a substantial factor in bringing about . . .a cervical strain, a shoulder strain, a trapezius strain, and a wrist and forearm strain/sprain" but that the "ganglion cyst, cervical stenosis, and a partial rotator cuff tear with impingement are clearly documented . . . as pre[]existing conditions which are not a direct result of the original

3

work-related event of May 18, 2014." Notably, Dr. Ford did not mention a tendinitis diagnosis; Ellis's medical records did not contain such a diagnosis at the time.

Dr. Powell served as Ellis's treating doctor and continued seeing Ellis and reviewing his condition every two to four weeks. *See* Tex. Lab. Code Ann. § 401.011(42) (defining "treating doctor" as "the doctor who is primarily responsible for the employee's health care for an injury"). Although Ellis's shoulder and wrist had recovered full range of motion one month after the accident, Dr. Powell later noted new limitations in Ellis's range of motion. But an MRI of Ellis's shoulder revealed that his right-shoulder rotator cuff—which was allegedly torn due to a preexisting injury—was fully intact. Moreover, the new range-of-motion limitations in Ellis's wrist were inconsistent with the 2014 injury. Dr. Powell thus referred Ellis to a specialist for his wrist, but her overall assessment of Ellis's condition remained unchanged.

The wrist specialist Ellis visited was Dr. Zehr, a hand surgeon. Dr. Zehr diagnosed Ellis with "[t]endinitis right wrist mainly first dorsal compartment" and concluded that the tendinitis—rather than the ganglion cyst—was the primary cause of Ellis's wrist pain. Dr. Zehr recommended cortisone injections and a thumb splint but noted that surgery was an option if necessary. When Ellis continued to experience pain, Dr. Zehr scheduled Ellis for surgery for the tendinitis. But Ellis canceled the surgery after learning that it would not be covered by workers' compensation.

4

TDI then appointed a designated doctor[1]—Dr. Clenney—to examine Ellis and impartially determine the extent of his compensable injury. *Id.* § 401.011(10) (defining "compensable injury"). Dr. Clenney noted significant limitations in the range of motion of Ellis's right wrist and right shoulder "far in excess of that based on the injury and the MRI." Dr. Clenney identified five potentially compensable conditions: (1) cervical sprain/strain; (2) right shoulder sprain/strain; (3) right wrist sprain/strain; (4) right trapezial strain; and (5) right forearm strain. But Dr. Clenney indicated that Ellis had not yet reached his date of maximum medical improvement (MMI).[2]

Meanwhile, Ellis visited yet another hand surgeon: Dr. Montejo. Although Dr. Montejo noted many of the same sprains and strains diagnosed by Ellis's other

---

[1]A designated doctor is "a doctor appointed by mutual agreement of the parties or by the division to recommend a resolution of a dispute as to the medical condition of an injured employee." Tex. Lab. Code Ann. § 401.011(15); *see also* 28 Tex. Admin. Code ch. 127 (2020) (Tex. Dep't of Ins., Designated Dr. Procedures & Requirements). The employer, the employee, or TDI may order a medical examination by the designated doctor to determine the extent of the employee's compensable injury, among other issues. *See* Tex. Lab. Code Ann. § 408.0041(a). TDI gives the designated doctor's report "presumptive weight unless the preponderance of the evidence is to the contrary." *Id.* § 408.0041(e).

[2]The date of "maximum medical improvement" in a case not involving spinal surgery is "the earlier of (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated; [or] (B) the expiration of 104 weeks from the date on which income benefits begin to accrue." *Id.* § 401.011(30).

5

doctors, he attributed Ellis's wrist pain to de Quervain's tenosynovitis and epicondylitis.[3] Dr. Montejo did not opine about the cause of these new diagnoses.

TDI then referred Ellis to Dr. Doores for yet another medical opinion.[4] Dr. Doores examined Ellis and his medical file, noting Ellis's preexisting ganglion cyst and rotator-cuff tear as well as Dr. Zehr's findings and Dr. Montejo's de Quervain's tenosynovitis diagnosis. But Ellis's presentation of his symptoms contradicted many of Dr. Doores's own observations; for example, Ellis claimed to have cervical-spine range-of-motion limitations but Dr. Doores informally observed Ellis using a greater range of motion than he claimed. Dr. Doores determined that Ellis had only three compensable conditions substantially caused by the 2014 accident: (1) "cervical strain"; (2) "right shoulder strain"; and (3) "right wrist strain." He opined that Ellis had reached his MMI when he recovered full range of motion in his shoulder, wrist, neck, and spine one month after the injury, stating "[s]ubsequent complaints are inconsistent with the injury and the physiologic response expected following this injury. [Range-of-motion] limitations recorded subsequently have no objective physiologic basis."

---

[3]Neither Ellis nor DART offered evidence at trial explaining the meaning of "de Quervain's tenosynovitis" or "epicondylitis."

[4]Dr. Doores conducted the "required medical examination." *See* Tex. Lab. Code Ann. § 408.004; 28 Tex. Admin. Code § 126.6 (2020) (Tex. Dep't of Ins., Required Med. Exam.).

6

Soon after, Dr. Powell filed a report agreeing with Dr. Doores regarding Ellis's MMI date. Dr. Powell identified four relevant diagnoses: a neck sprain, wrist pain, medial epicondylitis, and lateral epicondylitis.[5] Dr. Powell documented Ellis's claim that his conditions stemmed from the 2014 on-the-job accident, but Dr. Powell did not herself opine about the cause of those conditions.

Ellis's medical visits continued into 2015. In January—more than seven months after the accident—Dr. Clenney examined Ellis for a second time and reevaluated his earlier conclusions regarding the extent of Ellis's injury and his MMI date. As part of the reevaluation, Dr. Clenney reviewed over one hundred relevant documents and medical records, including the clinical findings of the physicians Ellis had visited since his accident. Ultimately, Dr. Clenney concluded that Ellis had only three compensable injuries caused or aggravated by the 2014 collision: (1) "cervical sprain/strain"; (2) "right shoulder sprain/strain"; and (3) "right wrist sprain/strain." Dr. Clenney also modified his earlier assessment of Ellis's MMI date and agreed with Dr. Doores and Dr. Powell that Ellis had reached MMI approximately one month after the accident when he regained full range of motion in his shoulder, wrist, neck, and spine.

Undeterred, Ellis sought a diagnosis from another hand surgeon: Dr. Ogunro. Ellis told Dr. Ogunro that he had been diagnosed with and was receiving injections

---

[5]Neither Ellis nor DART offered evidence at trial explaining the meaning of "medial epicondylitis" or "lateral epicondylitis."

from Dr. Zehr for de Quervain's tenosynovitis. After examining Ellis, Dr. Ogunro concluded that the primary cause of Ellis's right-wrist pain was intersection syndrome but noted that Ellis's ganglion cyst was contributing to his pain as well.[6] Like Drs. Montejo and Powell, Dr. Ogunro did not opine about the cause of any of Ellis's wrist conditions, apart from documenting Ellis's description of events.

Ultimately, DART agreed to cover three compensable injuries as part of Ellis's workers' compensation claim: (1) "cervical sprain/strain"; (2) "right shoulder sprain/strain"; and (3) "right wrist sprain/strain." This coverage aligned with the compensable injuries identified by Dr. Clenney and Dr. Doores. But Ellis claimed that the 2014 accident also caused or aggravated his right-shoulder rotator-cuff tear and right-wrist tendinitis. The parties could not resolve their dispute informally or through a TDI benefit-review conference. *See* Tex. Lab. Code Ann. §§ 410.021–34 (discussing benefit-review conference requirements and procedures).

**B. TDI Hearing**

TDI held a contested hearing to determine, among other things, whether "the compensable injury of May 18, 2014, . . . extend[ed] to and include[d] right shoulder partial rotator cuff tear and right wrist tendonitis." The hearing officer found that the disputed conditions "did not arise out of or naturally flow from the compensable

---

[6]Neither Ellis nor DART offered evidence at trial explaining what "intersection syndrome" means.

8

injury, nor were these conditions worsened, enhanced or accelerated by the compensable injury." The hearing officer explained his rationale:

> As for the issue of extent of injury, the cause and existence of the disputed conditions are matters beyond common experience and medical evidence needs to be submitted which establishes the causal connection as a matter of reasonable medical probability. . . .
>
> . . . .
>
> . . . This is a case based upon the legal sufficiency of the expert medical evidence. Claimant simply does not have a medical expert explaining how his compensable injury includes the disputed conditions.

A TDI appeals panel reviewed the hearing officer's decision and allowed it to become final. *See id.* § 410.204(c).

## C. Trial in District Court

Ellis then sought judicial review by filing suit in district court challenging TDI's decision on all contested issues. *See id.* §§ 410.301 (providing judicial review of compensability issues, among other issues), 410.302(b) (limiting the issues to those decided by the TDI appeals panel and on which judicial review is sought). Ellis appeared pro se at the bench trial, where he testified about the 2014 collision, his various medical examinations and tests, and his concern that DART had tampered with the bus surveillance-video recordings that captured the accident. Ellis entered four exhibits into evidence,[7] but Ellis requested that two of these—a 2013 report

---

[7]The record reflects express rulings admitting only three of Ellis's exhibits into evidence. But the fourth admitted exhibit—a CD containing DART's surveillance-video recordings—was presented to the trial court without objection and is included

from Dr. Ford and a copy of requests for production—be omitted from the appellate record. The record thus contains only two exhibits from Ellis: (1) a partial, unsigned medical record from the Lankford Hand Surgery Association—where Dr. Zehr practiced—indicating the physician's impression that Ellis had "[t]endinitis right wrist";[8] and (2) DART's surveillance-video recordings showing portions of the inside of Ellis's bus at the time of the accident.

DART called no witnesses but offered ten exhibits into evidence, including the TDI hearing officer's decision, the TDI appeals-panel decision, reports from Drs. Clenney, Doores, and Powell regarding the extent of Ellis's injury and his MMI date,

---

in the reporter's record. Both DART and Ellis have recognized the CD as an exhibit in their filings with us. The record is thus clear that the CD was implicitly admitted into evidence. *See* Tex. R. App. P. 33.1(a)(2)(A) (stating trial court may rule on a request expressly or implicitly); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (quoting *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003), and recognizing that "an implicit ruling *may* be sufficient to preserve an issue for appellate review," but cautioning that an implied ruling must be "clear" from the record); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 195 (Tex. App.—Fort Worth 2006, no pet.) (holding that trial court implicitly overruled objections and admitted appellees' summary judgment evidence by stating in its judgment that it considered such evidence).

Ellis claims—without argument or explanation—that the trial court admitted all nine of his offered exhibits into evidence. But the record reflects clear rulings from the trial court excluding five of them. Regardless, Ellis directed the court reporter to omit his five excluded exhibits from the appellate record.

[8]The partial medical record bears what appears to be a yellow sticky note with the words "Dr Zehr Findings." A longer version of the same document was attached to Ellis's summary-judgment response and confirms that the exhibit was a record from Dr. Zehr.

and Dr. Ford's peer-review report. DART also entered a copy of the TDI hearing officer's decision from a separate workers' compensation case related to Ellis's 2013 work-related accident. That decision showed that Ellis had unsuccessfully claimed that the 2013 accident caused a right-shoulder rotator-cuff tear and right-wrist tendinitis as well.

DART consistently argued that expert medical evidence causally linking Ellis's alleged injuries to the 2014 accident was required and that Ellis failed to carry his burden by not presenting such evidence. Ellis disagreed, arguing that the bus surveillance videos showed the cause and extent of his injuries and that inconsistencies within the videos indicated they had been tampered with. The trial court did not state whether it considered expert medical evidence legally necessary to prove causation, and neither party expressly requested a ruling on the issue.

After taking the case under advisement, the trial court issued a judgment in DART's favor. The judgment provides, in relevant part:

> THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES that the compensable injury of May 18, 2014, does not extend to and include right shoulder partial rotator cuff tear and right wrist tendonitis; Claimant did not have disability resulting from a compensable injury sustained on May 18, 2014, from June 20, 2014, to the date of the contested case hearing; Claimant reached maximum medical improvement on June 19, 2014; and Claimant's impairment rating is 0%, and the Texas Department of Insurance Division of Workers Compensation Decision & Order # FW-l4252313-01-CC-FW48, and Appeals Panel Decision, Appeal #151131, be upheld and affirmed in all respects.

Ellis filed a timely appeal indicating that he "disagree[d] with [the] findings based on the hearing" and "disagree[d] with Judge Weeks being assigned to [the] case." He did not request findings of fact or conclusions of law. *See* Tex. R. Civ. P. 296.

## II. Discussion

On appeal, Ellis argues that the trial court erroneously required expert medical evidence to prove that his 2014 on-the-job accident was a producing cause of his alleged rotator-cuff tear and tendinitis. Ellis further argues that this error resulted in a legally insufficient judgment.[9]

---

[9]Ellis also contends that the trial court's allegedly erroneous causation finding produced three additional erroneous findings regarding (1) the existence of a disability resulting from Ellis's compensable injury; (2) Ellis's MMI date; and (3) Ellis's impairment rating. But Ellis does not explain why, how, or to what degree these findings depended on the trial court's causation finding. Rather, Ellis merely states in a single sentence of argument that the trial court's allegedly erroneous causation finding "additionally produced the[se] ancillary findings." Ellis has waived his challenges to the "ancillary findings" due to inadequate briefing. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Wise Cnty. v. Mastropiero*, No. 02-18-00378-CV, 2019 WL 3755766, at *8 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.) (holding complaint waived where appellants provided a single-sentence argument with no citations to the record or to legal authority); *Martinez v. El Paso Cnty.*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck) (noting that Rule 38.1 "is not satisfied by merely uttering brief conclusory statements, unsupported by legal citations," and that "[f]ailure to cite legal authority or provide substantive analysis of an issue waives the complaint").

Regardless, Ellis's challenges to the "ancillary findings" are premised on the allegedly erroneous nature of the trial court's causation finding. Because we affirm the trial court's causation finding, Ellis would not prevail on his dependent challenges to the trial court's "ancillary findings."

## A. Expert Testimony

First, Ellis's claim that the trial court erroneously required expert medical evidence of causation is neither preserved nor dispositive. The record does not indicate that the trial court considered expert medical evidence legally necessary to establish causation. Ellis dedicates a significant portion of his briefing to this issue, but his arguments attack statements from the TDI hearing officer's decision—not the trial court's judgment. Although the trial court "upheld and affirmed" TDI's decision and order "in all respects," the court did not adopt the hearing officer's decision as a substitute for its own findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 299a ("Findings of fact shall not be recited in a judgment."). Indeed, no findings of fact or conclusions of law were requested or filed. *See* Tex. R. Civ. P. 296, 299a. Consequently, the trial court's judgment implies all findings necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) ("When neither party requests findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied."); *see also In re W.E.R.*, 669 S.W.2d 716, 716–17 (Tex. 1984) (per curiam). Absent conclusions of law to the contrary, we presume the trial court knew and correctly applied the law to the facts. *See Buckeye Ret. Co. v. Bank of Am.*, 239 S.W.3d 394, 402 (Tex. App.—Dallas 2007, no pet.) (applying rule to presume that trial court knew and correctly applied law regarding spoliation); *see also Jackson v. Gould*, No. 01-16-00203-CV, 2016 WL 5957214, at *5 (Tex. App.—Houston [1st Dist.] Oct. 13, 2016, no pet.)

13

(mem. op.) (rejecting claim that trial court allegedly applied an abolished legal doctrine because the doctrine was not in the court's conclusions of law). We thus overrule Ellis's challenge to the trial court's alleged error.

Regardless, even if Ellis could show that the trial court erred, he would still need to prevail on his legal-sufficiency challenge to obtain reversal. If a trial court errs in applying the law but nonetheless renders the proper judgment, the error alone does not warrant reversal. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *City of Forest Hill v. Benson*, 555 S.W.3d 284, 289 (Tex. App.—Fort Worth 2018, no pet.). Rather, we must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011); *Liberty Mut. Ins. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). We thus turn to Ellis's dispositive challenge: that regarding the legal sufficiency of the judgment. *See* Tex. R. App. P. 47.1.

## B. Legal Sufficiency

Ellis challenges the legal sufficiency of the trial court's finding that "the compensable injury of May 18, 2014, does not extend to and include right shoulder partial rotator cuff tear and right wrist tendonitis." As the party seeking judicial review of a TDI appeals-panel decision, Ellis had the burden to prove this issue at trial. Tex. Lab. Code Ann. § 410.303; *Morales v. Liberty Mut. Ins.*, 241 S.W.3d 514, 516 (Tex. 2007).

When an appellant attacks the legal sufficiency of an adverse finding on an issue he had the burden to prove, the appellant must demonstrate that (1) there is not more than a scintilla of evidence supporting the adverse finding; and (2) the evidence conclusively establishes all vital facts in support of the issue as a matter of law, leaving "no room for ordinary minds to differ." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019) (quoting *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing such a challenge, we begin by examining the record for evidence supporting the trial court's finding while ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241. If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* But anything more than a scintilla of evidence is legally sufficient to support the trial court's finding, ending our analysis at step one. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996).

Here, Ellis had to show that his May 2014 collision was a "producing cause" of right-wrist tendonitis and a right-shoulder rotator-cuff tear. *See Transcon. Ins. v. Crump*, 330 S.W.3d 211, 215–24 (Tex. 2010). An event is a "producing cause" of an injury if it is a substantial factor in bringing about the injury, without which the injury would not have occurred. *Id.* at 223. In other words, the act "must be . . . actually responsible for

15

the ultimate harm"—not merely "one of the countless ubiquitous and insignificant causes that in some remote sense may have contributed to a given effect." *Id.* at 224.

The question presented on appeal is thus whether the record contains more than a scintilla of evidence to support the trial court's finding that Ellis's 2014 on-the-job accident was not a substantial factor in bringing about his alleged right-wrist tendonitis or right-shoulder rotator-cuff tear, and that these injuries—to the extent they existed—would have occurred without the accident. The record contains far more than a scintilla of evidence supporting this finding.

First, there are omissions in the appellate record that we must presume are legally sufficient to support the judgment. Specifically, Ellis instructed the court reporter to omit from the record two of his exhibits that the trial court had admitted into evidence, along with instructing the court reporter to leave out five other (unadmitted) exhibits. One of the two admitted-but-omitted exhibits was a 2013 pre-accident report from Dr. Ford. Because we "must presume the omitted items supported the trial court's judgment," an appellant raising a legal-sufficiency challenge cannot discharge his burden to show that the judgment is erroneous without a complete or agreed record. *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002) (per curiam) (quoting *Gallagher v. Fire Ins. Exch.*, 950 S.W.2d 370, 371 (Tex. 1997) (per curiam)); *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam); *Christiansen v. Prezelski*, 782 S.W.2d 842, 843–44 (Tex. 1990) (per curiam); *see also Pye's Auto Sales, Inc. v. Gulf States Fin. Co.*, No. 01-05-00670-CV, 2007 WL 1559933, at *2–3 (Tex. App.—

Houston [1st Dist.] May 31, 2007, no pet.) (mem. op. on reh'g) (overruling legal-sufficiency challenge due to appellant's failure to include trial exhibits in the appellate record); *Adams v. Transp. Ins.*, 845 S.W.2d 323, 326–27 (Tex. App.—Dallas 1992, no writ) (holding that appellant was prevented from presenting factual-sufficiency challenge on appeal where multiple trial exhibits were lost or destroyed). A party may avoid the presumption that omitted portions of the record support the judgment if the appellate record includes (1) the appellant's request for a partial reporter's record; and (2) a statement from the appellant limiting the points to be presented on appeal. Tex. R. App. P. 34.6(c); *CMM Grain Co. v. Ozgunduz*, 991 S.W.2d 437, 439–40 (Tex. App.—Fort Worth 1999, no pet.). The record in this case contains neither. We therefore presume that the omitted exhibits support the trial court's judgment. This alone is fatal to Ellis's legal-sufficiency challenge. *Bennett*, 96 S.W.3d at 229 (recognizing that, absent a statement confining the appeal to specific points or issues in compliance with Rule 34.6, "[t]here is no question that . . . Rule 34.6 would require the appellate court to affirm the [legal and factual sufficiency of the] trial court's judgment"); *Schafer*, 813 S.W.2d at 155; *CMM Grain Co.*, 991 S.W.2d at 440.

But even without the omitted exhibits, the appellate record contains more than a scintilla of evidence to support the trial court's challenged finding. Dr. Clenney and Dr. Doores both concluded that Ellis had only three compensable injuries caused or aggravated by the 2014 accident—to the exclusion of Ellis's other conditions and diagnoses. The doctors' shared conclusion was consistent with Ellis's emergency-

17

room records on the night of the accident, consistent with the clinical findings documented by Dr. Lawus-Scurry and Dr. Powell in the days following the accident, and consistent with Dr. Ford's findings upon peer-review. Dr. Clenney and Dr. Doores further noted that Ellis's right shoulder and right wrist regained full range of motion roughly a month after the accident, and Ellis's later diagnoses, complaints, and reported range-of-motion limitations were inconsistent with the injury.

Record evidence also draws into question the existence of Ellis's rotator-cuff tear and tendinitis. Although Ellis had a partial rotator-cuff tear in his medical history, an MRI taken approximately two months after the accident revealed an intact right-shoulder rotator cuff. And Ellis's tendinitis diagnosis was one of numerous alternative assessments of his wrist pain. Plus, the tendinitis assessment came two months after the accident while Ellis's wrist was exhibiting new range-of-motion limitations "inconsistent with the injury."

The record contains yet another piece of evidence: the TDI appeals-panel decision. The trial court was statutorily required to "consider the decision of the appeals panel" in rendering its judgment, and the decision was admitted into evidence at trial. *See* Tex. Lab. Code Ann. § 410.304(b). The court was "free to give the appeals-panel decision no weight, some weight, or significant weight, depending on [the court's] view of the evidence." *Liberty Mut. Ins. v. Camacho*, 228 S.W.3d 453, 460 (Tex. App.—Beaumont 2007, pet. denied). The appeals-panel decision itself thus served as evidence in support of the trial court's causation finding. *Burk*, 295 S.W.3d at

779 ("Once the trial court took judicial notice of the appeals panel decision, it was evidence in the case that could potentially support the trial court's judgment."); *see also ESIS, Inc. v. Johnson*, 908 S.W.2d 554, 558–61 (Tex. App.—Fort Worth 1995, writ denied) (holding that an appeals-panel decision is admissible as part of the TDI record under Tex. Lab. Code Ann. § 410.306(b)).

Given the presumption arising from Ellis's omitted exhibits, the medical records entered into evidence at trial, and the appeals-panel decision, more than a scintilla of evidence exists to support the trial court's finding that Ellis's 2014 on-the-job accident was not a producing cause of his right-wrist tendinitis or right-shoulder rotator-cuff tear. We overrule Ellis's legal-sufficiency challenge.

## III. Conclusion

Having overruled both of Ellis's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: January 14, 2021